Lloyd Earl **GREGG**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–93–284–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1994.

James R. Lawrence, Corpus Christi, for appellant.

Carlos Valdez, Dist. Atty., James D. Rosenkild, Asst. Dist. Atty., Corpus Christi, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

This is an appeal from a capital murder conviction. The jury found appellant guilty of shooting to death his wife's uncle, while in the course of committing burglary. After the prosecution waived the death penalty, the trial court assessed a life sentence.

Appellant asserts three complaints: (1) the trial court erred in permitting the jury to separate after the charge was read; (2) the trial court erred in refusing to grant a mistrial after one juror became ill during deliberations; and (3) the trial court erred in holding the evidence as sufficient to support his conviction. We affirm the judgment of the trial court.

### Statement of Facts

Appellant and Melinda Gregg were married in May 1990 and had one son. They had an on-again-off-again relationship, often separated more than they were together. During the times they were together, they frequently lived with Melinda's family in Corpus Christi.

In February 1992, appellant and Melinda separated. Appellant moved to Houston, and Melinda retained custody of their son and continued to live with her mother, sister, brother, uncle, and grandparents in the fami-

ly home. Since the separation in February 1992, appellant never again lived in the home, although he visited Melinda and his son on several occasions.

On September 4, 1992, two days before committing the offense, appellant drove from Houston to Corpus Christi. The purpose of his trip is in dispute as to whether appellant intended to kill Melinda or kidnap his son. On the morning of September 6, 1992, appellant went to Melinda's home. Her grandfather was outside mowing the lawn and did not see appellant enter the house. The only inhabitants were appellant's fifteen-month-old son; Melinda's sister, Jennifer Gonzales; and Melinda's uncle, Rudy Prado. Jennifer was babysitting appellant's son, and Rudy was sleeping on the living room floor on a mattress. Jennifer did not hear appellant enter the house or anything else until she heard two gunshots. She ran to the living room where she saw appellant getting up from kneeling near Rudy. She then ran back to the bedroom and picked up appellant's son, but appellant forced her at gunpoint to hand over the child. Appellant fled, and Jennifer then called 911.

The police arrived to find Rudy lying on the mattress, dead from two gunshot wounds to the head. There was no sign of a struggle; his head was on a pillow, and he was covered with a blanket. The police arrested appellant the same day.

Following a three-day trial and approximately one hour into deliberations on guilt, the presiding juror suddenly became ill and required an ambulance. The court asked both counsel if they agreed to let the jury separate. Each replied that he had no objection. The court then advised the jury and appellant that it did not know whether the presiding juror would be able to continue the following day, and that because the deliberations could not continue without all twelve jurors, the court would recess until the following morning. The court then explained that if the ill juror was not able to continue, it would have to declare a mistrial. After reminding the jurors not to discuss the case until after they had been discharged, the court excused them at 2:00 p.m. on Thursday with instructions to return 9:00 a.m. on Friday.

Early Friday morning, the court spoke with the presiding juror on the telephone while he was still in the hospital. The juror assured the court that he was all right and would be ready to return to court the following Monday at 9:00 a.m. The court then excused the eleven jurors with instructions to return Monday at 9:00 a.m. Appellant's counsel then moved for a mistrial, complaining that appellant was prejudiced by the length of time the jurors were separated. The court overruled the motion, notified counsel of the telephone conversation it had had with the ill juror, and instructed counsel to return to court on Monday.

The presiding juror returned for duty on Monday morning. Appellant's counsel again moved for a mistrial. The gist of this second motion was three-fold: First, he complained that he never agreed to the extended period of jury separation. Second, he cited as authority supporting his motion, article 36.29 of the Texas Code of Criminal Procedure, which governs discharge of the jury when a juror becomes ill after the charge is read. Finally, he complained that even though he had the affirmative duty under article 35.23 of the Texas Code of Criminal Procedure to move to sequester the jury, sequestration was not a viable option since the one juror was hospitalized. The court overruled appellant's second motion for mistrial. The jury then proceeded with its deliberations and returned forty minutes later with a guilty verdict. The court accepted the verdict and assessed a life sentence.

### Points of Error

In his first point of error, appellant asserts the trial court erred in allowing the jury to separate after the charge had been read to the jury, citing as authority, article 35.23 of the Texas Code of Criminal Procedure. As amended in 1989, article 35.23 provides, in part, that the trial court may on its own motion, or shall on either party's motion, order the jury to be sequestered after the charge is read. Tex.Code Crim.Proc.Ann. art. 35.23 (Vernon Supp.1994).

There is limited case law interpreting the 1989 amended version of article 35.23, which no longer forbids separation of jurors after the charge is read.[1] *Krueger v. State*, 843 S.W.2d 726, 728 (Tex.App.—Austin 1992, pet ref'd) (per curiam). Rather, it permits jurors to separate unless the court or party makes a motion to sequester the jury. *Id.*; *Hood v. State*, 828 S.W.2d 87, 92 (Tex.App.—Austin 1992, no pet.). Here, appellant failed to make a timely motion to sequester the jury. Without such a motion, it is within the trial court's discretion to permit the jury to separate. *Keiser v. State*, 880 S.W.2d 222, 223 (Tex.App.—Austin, 1994, no pet. h.).

In order for appellant to preserve his complaint for appellate review, appellant must have presented to the trial court either a timely objection to jury separation or a timely motion to sequester the jury. *See* Tex.R.App.P. 52(a). To be considered timely, objections and motions must be made at the earliest possible opportunity. *See, e.g.*, *Martinez v. State*, 863 S.W.2d 468, 472 (Tex. Crim.App.1993) (addressing the Tex. R.App.P. 52(a) timeliness requirement for preserving error).

Appellant's earliest possible opportunity to either timely object or make a motion occurred when the ill juror left in the ambulance and the court asked counsel, "Do you agree to let the jury separate?" Appellant's counsel failed to seize this opportune time to either object or make the motion. In fact, he replied, "I have no objection."

In the absence of a timely motion or objection, nothing is presented for appellate review. *Cooper v. State*, 500 S.W.2d 837, 841 (Tex.Crim.App.1973). Because appellant did not timely make a motion, or object whatsoever, he failed to preserve this point of error for review. Accordingly, we overrule point of error one.

In his second point of error, appellant asserts the trial court erred in failing to grant his motion for mistrial. Although appellant moved for mistrial twice, it is his second motion concerning ill jurors that is the focus of this point. Appellant cites article 36.29 of the Texas Code of Criminal Procedure as authority mandating mistrial when a juror becomes ill after the charge is read. Article 36.29(c) provides, in part, that after the charge is read, if any juror becomes *so sick as to prevent him from continuing his duty*, the jury shall be discharged. Tex.Code Crim.Proc.Ann. art. 36.29(c) (Vernon Supp. 1994) (emphasis added).

Here, the issue is whether the presiding juror was so sick as to prevent him from continuing his duty; if so, the court should have granted the mistrial. Appellant cites no authority for the applicable standard for reviewing this issue. Neither the State nor this court found authority directly on point in determining what constitutes "so sick" within the meaning of article 36.29(c). However, case law is replete with authority on the proper standard for reviewing a trial court's decision as to whether a juror is "disabled" within the meaning of article 36.29(a) of the Texas Code of Criminal Procedure. *See, e.g.*, *Bass v. State*, 622 S.W.2d 101, 106–07 (Tex. Crim.App.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982); *Freeman v. State*, 838 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1992, pet. ref'd). The trial court has discretion to determine whether a juror is disabled. *Id.* Absent an abuse of discretion, no reversible error will be found. *Id.*

The same standard used in reviewing juror "disability"—the abuse of discretion standard—should be used in reviewing the severity of juror illness. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90

---

1. Under the pre–1989 version of Tex.Code Crim. Proc.Ann. art. 35.23, the jury was not permitted to separate after the reading of the court's charge until a verdict was rendered or the jury was discharged, unless the defendant consented to separation. *Harris v. State*, 738 S.W.2d 207, 211 (Tex.Crim.App.1986).

L.Ed.2d 721 (1986)). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.*

Here, after the presiding juror became ill, but before the court recessed the jury on Thursday afternoon, neither counsel objected to the jury separating. The following Friday morning before the remaining eleven jurors assembled, the court spoke with the hospitalized juror on the telephone, at which time the juror affirmed he would be ready to return to duty on the following Monday. At that time, the court could anticipate that the presiding juror's total absence would be, at the most, one and one-half days. The court did not act arbitrarily or unreasonably in deciding the one and one-half days of delay due to illness did not rise to the level of being "so sick" as to prevent the juror from continuing his duty. Therefore, the trial court did not abuse its discretion, and we overrule point of error two.

In his third point of error, appellant asserts the trial court erred in holding the evidence to be sufficient to sustain the conviction. Appellant contends the evidence was insufficient to prove lack of effective consent—an essential element of the underlying offense of burglary.

Because under his third point, appellant refers to the trial court's denial of his motion for instructed verdict after the prosecution rested its case, we interpret this point as a challenge to the trial court's ruling on appellant's motion for instructed verdict. A challenge to a court's ruling on a motion for instructed verdict is actually a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990); *Velasquez v. State,* 815 S.W.2d 842, 845 (Tex.App.—Corpus Christi 1991, no pet.).

The standard for reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Nelson v. State,* 848 S.W.2d 126, 131 (Tex.Crim.

App.1992). In assessing the sufficiency of the evidence to support a conviction, a reviewing court must consider all the evidence, whether properly or improperly admitted. *Lockhart v. Nelson,* 488 U.S. 33, 40–41, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265 (1988); *Deason v. State,* 786 S.W.2d 711, 716 (Tex. Crim.App.1990). Furthermore, the sufficiency of the evidence must be measured against the entire jury charge. *Jones v. State,* 815 S.W.2d 667, 670–71 (Tex.Crim.App.1991).

The jury charge sets forth the four elements of the offense of capital murder as applicable to this case: (1) the appellant, (2) intentionally, (3) caused the death of Rudolfo Prado, and (4) while in the course of committing a burglary of the habitation of Rosario Prado. *See* Tex.Penal Code Ann. § 19.03(a) (Vernon Supp.1994); *see, e.g., Nelson,* 848 S.W.2d at 131 (naming the elements of capital murder where the defendant committed murder in the course of a robbery).

The jury charge also sets forth the elements of the offense of burglary of a habitation: (1) a person, (2) without the effective consent of the owner, (3) enters a habitation, and (4) with the intent to commit theft or any felony. *See* Tex.Penal Code Ann. § 30.02(a)(1) (Vernon 1989); *see Escamilla v. State,* 612 S.W.2d 608, 608 (Tex. Crim.App.1981). With respect to the elements of the offense of burglary, appellant challenges only the sufficiency of the evidence to support the jury's finding that appellant entered the habitation without the effective consent of the owner. As relevant here, the Penal Code defines "owner" as a person who has title to the property or a greater right to possession of the property than the defendant. Tex.Penal Code Ann. § 1.07(a)(24)(A) (Vernon Supp.1994). "Possession" is defined as actual care, custody, control, or management. Tex.Penal Code Ann. § 1.07(a)(28) (Vernon 1989).

Thus, under the Penal Code, any person who has a greater right to the actual care, custody, control, or management of the property than the appellant may be alleged as the "owner." *Alexander v. State,* 753 S.W.2d 390, 392 (Tex.Crim.App.1988), *on remand,* 757 S.W.2d 95, 97; *Davis v. State,* 783

S.W.2d 313, 316 (Tex.App.—Corpus Christi 1990, no pet.). With respect to the issue of whether Rosario Prado was considered an owner, the prosecution presented evidence via Prado's own testimony, that she lived at the house, provided for the family, and essentially had control over what happened at the house. The fact that Rosario Prado's parents were title owners, did not preclude her from being considered an "owner." *Little v. State,* 567 S.W.2d 502, 507 (Tex.Crim.App. 1978).

With respect to the issue of whether Rosario Prado gave appellant consent to enter the house, Prado testified that she did not allow appellant to take his son from her house unless Melinda accompanied him. She also testified that she had no idea appellant was planning to go to the house on the day of the offense, and that she did not give him permission to enter the house that day. Prado further testified that whenever she was away from home, she would frequently call the house and check on the child because she was concerned about appellant taking the child. When asked, "Did he have you-all's permission just to walk in whenever he could?", Prado answered, "No."

Appellant's testimony shed more evidence on the consent issue. Appellant confirmed that he had not lived in Prado's household for seven months nor had he visited the house for the three months prior to his offense. He also confirmed that the only time Prado ever approved of him going into the house was when Melinda was there.

 At trial, the prosecution had the burden to prove that, as alleged in the indictment, Prado did not consent to appellant's entry; the prosecution was not required to disprove that other household members did not consent. *See Davis v. State,* 782 S.W.2d 211, 220–21 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). When reviewing this evidence in the light most favorable to the prosecution, the evidence is sufficient for a rational trier of fact to have found beyond a reasonable doubt that appellant, who had not been a member of his wife's household for seven months, was not welcome there and was not permitted to just enter in at will.

Furthermore, the evidence is sufficient to have found that, under these circumstances, Prado did not consent to appellant's entry and had a greater right to possession of the property than appellant. *Compare Stanley v. State,* 631 S.W.2d 751–53 (Tex.Crim.App. 1982) (finding no implied consent to break and enter merely because of the marital status, where the couple separated and the wife moved and established another home for herself) and *Hudson v. State,* 799 S.W.2d 314, 315–16 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd) (finding no evidence upon which the jury could find the defendant had a greater right of possession to woman's apartment where, although they once lived together, she later made him move out). Accordingly, we overrule point of error three.

The judgment is AFFIRMED.