TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00593-CR






Lois Marie Nelson, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT

NO. CR20,584, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 A jury convicted Lois Marie Nelson of burglary and assessed sentence at eight years
in prison. See Tex. Pen. Code Ann. § 30.02 (West 2003). She contends that the evidence was
factually insufficient to support her conviction. She also complains that the court erred by excusing
a juror who was not disabled and by forcing appellant to continue her trial with only eleven jurors. 
We will affirm the judgment.

 On appeal, Nelson does not dispute that, while engaging in prostitution, she entered
a motel room and participated in the theft of a wallet found in the room. She contends only that the
evidence is insufficient to show that she committed burglary because there is insufficient evidence
to show that she did not have consent to enter the room as required by the burglary statute. See id.
§ 30.02. 

 In a factual sufficiency review, we view all of the evidence in a neutral light and will
set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly
unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt
could not have been met. See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). 
We must show appropriate deference to the fact-finder, and must not substantially intrude upon the
fact-finder's role as the sole judge of the weight and credibility given to witness testimony. See id.
at 481; see also Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

 On the night of the offense, Nelson was driving around Rockdale with three
companions. She stopped in the parking lot of a motel, and she and Bessie Hebbe approached two
men, Ignacio Sosa and Effrin Pernell, who were staying at the motel in Rockdale while working in
nearby Thorndale. The women spoke with Pernell because Sosa does not speak English.

 Sosa testified through a Spanish-English interpreter (1) that the women told Pernell that
they were looking to make some money through prostitution. Sosa said Pernell told the women that
he and Sosa were not interested, but that the women could "go upstairs." The women went to Sosa's
room, the door to which was ajar; Sosa's roommate and boss, Ruben Cortes, was in the shower in
that room. Sosa did not give them permission to enter the room. From the parking lot, Sosa saw the
women enter his room, leave hurriedly, get in a car, and drive away quickly; he did not see them
interact with Cortes. After the women left, Sosa went up to the room, knocked on the bathroom
door, and asked where Cortes's wallet was. Cortes told Sosa the wallet was on the table between
the beds in the motel room. Instead, Cortes's wallet was missing.

 Cortes said he had the only room key and left the door to his motel room ajar while
showering so that Sosa could enter if he wanted to do so. Cortes did not know that anyone had
entered the room while he was showering. He testified that he did not give Nelson permission to
enter his room or to take his wallet. He said that, when the police returned his wallet, it was missing
$180 to $200.

 Hebbe mostly confirmed Sosa's version of events in the parking lot, but said more
specifically that Pernell directed them to talk to their boss in room 207, which was Cortes's room.
Hebbe testified that she felt that the men "[k]ind of, sort of" told them to walk into the room, but also
testified that no one "really" gave them permission to enter the room. Hebbe said that the motel
room door swung open when Nelson knocked on it. Hebbe stepped into the room first, and Nelson
stepped into the doorway. They heard the shower running, then Nelson saw the wallet and told
Hebbe to grab it. Hebbe put the wallet in her pocket and took it to the car; Hebbe testified that she
grabbed the wallet because Nelson told her to do so. She said that Nelson took the wallet once they
got to the car. After removing the money, they put the wallet in the twelve-pack soda box and
dropped it in a dumpster. She later took police to the dumpster where they found the wallet. She
confirmed that police recovered nothing belonging to Cortes or Sosa from the car or the women. 
Hebbe pleaded guilty to burglary and was sentenced to ten years in prison, probated for seven years. 

 Genell Dixon testified essentially consistently with the other witnesses, but she
testified that the men in the parking lot of the motel called up to Nelson and Hebbe and told them
to enter the room. Dixon remained in the car during the entire incident.

 There is some discrepancy in the testimony regarding whether anyone gave Nelson
permission to enter the room. Sosa and Cortes both denied giving permission, and Hebbe did not
claim that she had permission; only Dixon testified that anyone gave permission. By convicting
Nelson, the jury resolved this conflict in the testimony against Nelson. Factually sufficient evidence
supports their finding that Nelson did not have permission to enter the room.

 Nelson contends by her remaining issue that the district court erred by excusing a
juror who was not disabled and by forcing Nelson to continue the trial with only eleven jurors. The
court dismissed a juror who had stated that financial problems he felt would be exacerbated by jury
service would cause him to be unfair to Nelson. The court determined that the juror's expressed bias
would make it unfair to force Nelson to trial with the juror, but that the juror's emotional state from
the financial stress rendered the juror disabled.

 The right in a felony trial to a jury of twelve members is established by the state
constitution and statutes. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 33.01(a) (West
Supp. 2004-05). The constitution permits a jury to render a decision when no more than three jurors
die or are disabled, but permits the legislature to change the authorization of less than the whole
number of the jury to render a verdict. Tex. Const. art. V, § 13. The legislature has reiterated that,
after a juror becomes disabled (as determined by the judge) from sitting at any time before the charge
of the court is read to the jury, the remainder of the jury can render the verdict if every juror
concurring in the verdict signs it. (2) Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2004-05). 
"Disabled" means any condition that inhibits the juror from fully and fairly performing the functions
of a juror. Griffin v. State, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972). The disability can be
physical, mental or emotional, but does not include mere bias. Carrillo v. State, 597 S.W.2d 769,
771 (Tex. Crim. App. 1980). 

 We review for an abuse of discretion the district court's determination that the juror
was disabled. Griffin, 486 S.W.2d at 951. A trial court abuses its discretion if the decision is so
clearly wrong as to lie outside the zone within which reasonable persons might disagree. See Cantu
v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). The test for abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial
court's action; rather, it is a question of whether the court acted without reference to any guiding
rules and principles. See Gregg v. State, 881 S.W.2d 946, 950 (Tex. App.--Corpus Christi 1994,
pet. ref'd) (citing Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). 

 Courts have exercised their discretion in assessing juror disability in different ways. 
The Corpus Christi court of appeals found no abuse of discretion in the dismissal of a juror who was
extremely concerned about the financial toll that sitting in trial was taking on his ability to support
his family; the court affirmed the district court's determination that these concerns, which he feared 
would leave him unable to concentrate on his duties as a juror, rendered him disabled from being a
juror. Freeman v. State, 838 S.W.2d 772, 774 (Tex. App.--Corpus Christi 1992, pet. ref'd). That
court deferred to the trial court's observation of Martinez's demeanor and assessment of his tone of
voice. Id. Dismissing jurors found to be emotionally disabled by deaths in their families has been
found not to be an abuse of discretion. Clark v. State, 500 S.W.2d 107, 109 (Tex. Crim. App. 1973);
Wells v. State, 762 S.W.2d 673, 674 (Tex. App.--Texarkana 1988, pet. ref'd); Mills v. State, 747
S.W.2d 818, 820 (Tex. App.--Dallas 1987, no pet.). Dismissing a juror arrested for intoxication
during a trial lunch break was not an abuse of discretion. Griffin, 486 S.W.2d at 951. However,
dismissing a juror who overheard comments not shown to be prejudicial to the defendant by a person
not shown to be a witness in the trial was an abuse of discretion. Marquez v. State, 620 S.W.2d 131,
133 (Tex. Crim. App. 1981). 

 In this case, at the lunch recess, a juror approached the bench and asked to be excused
from jury service. He said he needed to work or he would lose his business, house, and car. When
the court told the juror he should have raised the issues before selection, the juror asked what the fine
or imprisonment would be for not serving; the court assured him that his incarceration would last
longer than the trial. The juror said that if he was forced to serve he would take his frustration out
on someone, and reminded the court that he also had mentioned during voir dire a conflict with the
prosecutor's husband. Nelson's attorney reported to the court that, after the court declined to dismiss
the juror and recessed for lunch, the juror followed Nelson's attorney out of the courtroom and
warned that he would take out his frustrations on Nelson because somebody would have to pay for
him being forced to serve on the jury. After lunch, the juror apologized for his statements that he
said arose out of anger and claimed not to remember exactly what he said to Nelson's counsel, saying
that he was mostly talking to himself. He said that his parents had agreed to help with his financial
difficulties, which had followed a wreck. He asserted that he could be fair to both sides.

 We conclude that the juror showed sufficient emotional stress that the court did not
abuse its discretion by finding him disabled and dismissing him. The intensity of the outburst and
its duration, followed fairly shortly by a recantation, support a finding of emotional instability. The
juror's willingness to lash out at and assert bias against both sides, then disavow the substance of the
alleged bias, also supports the finding of disability. The juror consistently described a situation of
financial difficulties creating stress. While the juror's apology and assertions that he could be fair
could have supported the court finding no disability, we cannot say based on the cold record that the
court abused its discretion by finding that the juror was disabled.


CONCLUSION

 The district court did not abuse its discretion by dismissing a disabled juror and
continuing the trial with eleven jurors without Nelson's consent. Factually sufficient evidence
supported the verdict of the remaining jurors that Nelson committed burglary by entering the motel
room without consent and participating in the theft of Cortes's wallet and money. We affirm the
judgment.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: March 10, 2005

Do Not Publish
1. Sosa testified that his understanding of the conversation was based on Pernell's translations
at the time of the events.
2. The legislature has determined that parties also may agree to try a case with fewer jurors,
see Tex. Gov't Code Ann. § 62.201 (West 1998), but the parties did not agree to do so in this case.