

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00274-CR

**RODNEY ALLEN JERNIGAN,**

                                                **Appellant**

**v.**

**THE STATE OF TEXAS,**

                                                **Appellee**

---

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 06-05099-CRF-85

---

## MEMORANDUM OPINION

---

A jury convicted Rodney Allen Jernigan of burglary of a habitation and the trial court sentenced him to three years in prison. In two points of error, Jernigan challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

### FACTUAL BACKGROUND

Jernigan and his girlfriend Pamela Richardson had an on and off relationship. On the day of the offense, Jernigan received Pamela's permission to retrieve their child R.J. at Pamela's apartment. When Jernigan arrived, he knocked on the door and

Pamela's mother Luedell Richardson opened the door. Jernigan entered the apartment and went upstairs where he saw Anton Brown, Pamela's new love interest, holding R.J. Jernigan asked, "Is that your baby?" Brown handed R.J. to Pamela. Brown testified that Jernigan cursed at Pamela who stated, "I'm not here for your s---, Rodney" and that Jernigan responded "F--- it. I'm not taking her." Pamela testified that she told Jernigan, "You either get [R.J.] or you need to leave." Jernigan testified that Pamela merely told him that R.J. was not ready and that he looked at Pamela in "disgust." Jernigan left the room without R.J. and went downstairs. Brown and Pamela heard the front door slam, but did not see Jernigan leave the apartment.

Pamela's daughter T.D. was sitting on Pamela's car talking on the telephone. She had seen Jernigan arrive at the apartment. Jernigan testified that he parked next to Pamela's car, but did not see T.D. T.D. testified that she later saw Jernigan exit the apartment. About ten to fifteen minutes later, T.D. saw Jernigan return, walk quickly towards the apartment, and let himself into the apartment.

Inside the apartment, Brown and Pamela heard someone coming up the stairs. Brown turned to see Jernigan and the two men became involved in a struggle. Pamela yelled at the men to "stop." T.D. heard the "ruckus" and entered the apartment. Pamela instructed her to call the police. During the call, Jernigan stopped fighting, pushed past T.D., and left the apartment.

According to Jernigan, he never left the apartment, but waited for R.J. downstairs. He had a brief discussion with Luedell who then went upstairs to retrieve R.J. Jernigan heard Luedell and Pamela arguing and went upstairs to investigate. He

testified that T.D. was in the room next door to Pamela's room. When he entered Pamela's room, he and Brown looked at each other and began fighting.

## LEGAL SUFFICIENCY

In point one, Jernigan argues that the evidence is legally insufficient to support his conviction because he had a legal right to enter the apartment, given that he kept some belongings there and Pamela had given him permission to enter the apartment for the purpose of retrieving R.J., which consent had not been revoked.[1]

### Standard of Review

Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Matson*, 819 S.W.2d at 843.

---

[1] For purposes of his legal sufficiency argument, Jernigan accepts that the jury chose to believe T.D.'s testimony that he left the apartment.

## Analysis

A person commits the offense of burglary by entering a habitation without the effective consent of the owner, with the intent to commit a felony, theft, or assault. TEX. PEN. CODE ANN. § 30.02(a)(1) (Vernon 2003). "Owner" means a person who has "title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PEN. CODE ANN. § 1.07(a)(35)(A) (Vernon Supp. 2009).

Jernigan once lived with Pamela in the apartment. Pamela alone signed the lease, but "Rodney Jernigan" was identified as an "occupant." Pamela testified that this referred to her son "Rodney Jernigan, *Jr.*"[2] T.D. was the only other named "occupant." Jernigan testified that he and Pamela purchased furniture together and he moved his belongings into the apartment. Pamela testified that Jernigan paid some of the bills.

Pamela later asked Jernigan to move out. Jernigan testified that he left some items behind, such as computer equipment and clothing. Jernigan's sister confirmed that some of his belongings remained at the apartment, such as plants and a blue chair. Jernigan identified one such item, a rack, from a photograph of the apartment. His sister could not identify any of Jernigan's belongings from the photographs. Pamela testified that none of Jernigan's belongings remained at the apartment.

After R.J.'s birth, Jernigan often visited the apartment and sometimes spent the night. He testified that Pamela had been ill, so he assisted with bills and rent. Pamela testified that Jernigan stopped visiting regularly about two or three months after R.J.'s

---

[2] Rodney Jernigan, Jr. is Pamela and Jernigan's first child. R.J. is their second child.

birth. She did not believe Jernigan had a key to the apartment. She explained that

Jernigan was not allowed to walk into the apartment without knocking and had never

done so before. Jernigan, however, testified that he did have a key to the apartment, but

did not use the key when separated from Pamela and always knocked before entering

the apartment. He was not residing at the apartment at the time of the offense and

admitted that he could not come and go as he pleased. Both Pamela and T.D. testified

that Jernigan had not been around for months before the day of the offense. Both

Jernigan and his sister testified that he moved out only three days before the offense.

It is undisputed that Jernigan first entered the apartment with permission. When

he encountered Brown, however, Pamela specifically instructed Jernigan to either take

R.J. or leave the apartment. The jury could reasonably conclude that Pamela wanted

Jernigan to leave, with or without R.J., thereby withdrawing her consent to Jernigan's

continued presence in the apartment. *See Beatty v. State*, No. AP-75,010, 2009 Tex. Crim.

App. Unpub. LEXIS 167, at *13-14 (Tex. Crim. App. Mar. 11, 2009) ("To prove burglary,

[Beatty] must have entered Click's house after Click withdrew her consent;" Beatty left

the apartment after Click told him to do so and later returned without her consent).

The jury could also reasonably conclude that Pamela was the "owner" of the

apartment and that Jernigan did not have a legal right to be there absent Pamela's

consent. Although he had previously lived with Pamela, he was not listed as a tenant

on the lease and he was not allowed to freely enter the apartment. *See Mack v. State*, 928

S.W.2d 219, 223 (Tex. App.—Austin 1996, pet. ref'd) (Although Mack's name was on the

lease, he "voluntarily abandoned those rights on the date of the offense and had far less

right, *at that time,* to control of the apartment than did McKinley:" he "voluntarily moved out, removed almost all of his possessions from the apartment, [] began living with his parents," "stopped paying rent or utilities," was "repaid [] for his portion of the deposit," and "agreed not to visit the apartment unless he first called for permission."); *see also Gregg v. State*, 881 S.W.2d 946, 952 (Tex. App.—Corpus Christi 1994, pet. ref'd) ("[T]he evidence is sufficient for a rational trier of fact to have found beyond a reasonable doubt that appellant, who had not been a member of his wife's household for seven months, was not welcome there and was not permitted to just enter in at will."). The jury could accept Pamela's testimony that Jernigan did not have a key to the apartment, had removed his belongings from the apartment, and was not the "occupant" identified on the lease. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *Curry*, 30 S.W.3d at 406; *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2789. The evidence is legally sufficient to support the verdict. We overrule point of error one.

## FACTUAL SUFFICIENCY

In point two, Jernigan contends that the evidence is factually insufficient to show that (1) he left the apartment and later returned to enter without permission; and (2) in the alternative, re-entered the apartment without the effective consent of the owner.

## Standard of Review

Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

## Analysis

Jernigan testified that he came to the apartment and left the apartment only one time. He argues that T.D.'s testimony is uncorroborated and, therefore, insufficient to show otherwise. He maintains that the jury struggled with the lack of corroboration. Specifically, the jury asked to review the police report and requested T.D.'s testimony regarding Jernigan's leaving and re-entering the apartment. The trial court read T.D.'s testimony to the jury. The jury subsequently informed the trial court that it was deadlocked. The trial court released the jury for lunch and, upon the jury's return, responded to the jury's request to hear testimony of Officer Patrick McCarthy regarding "whose statements were taken on the night of July 7 and if they were consistent with one another." McCarthy had testified that Luedell and T.D. corroborated statements made by Brown and Pamela. This testimony was not read to the jury. Rather, the trial

court read McCarthy's testimony explaining that discrepancies in statements would be important to include in his report. The jury resumed deliberations and convicted Jernigan.

"A burglary conviction may be supported by the testimony of one witness without corroborating evidence." *Lopez v. State*, No. 10-07-00325-CR, 2009 Tex. App. LEXIS 5853, at *5 (Tex. App.—Waco July 29, 2009, no pet.) (not designated for publication) (citing *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984)). T.D.'s testimony alone supports a conclusion that Jernigan left the apartment and later re-entered the apartment. Additionally, Brown and Pamela both heard the front door slam, suggesting that Jernigan left the apartment after being told to do so by Pamela. The jury, as the sole judge of the weight and credibility of the evidence, was entitled to accept T.D.'s testimony that Jernigan left the apartment to later return and reject Jernigan's contrary testimony. *See Lancon v. State*, 253 S.W.3d 699, 706-07 (Tex. Crim. App. 2008).

Moreover, the record indicates that Pamela withdrew her consent to Jernigan's presence in the apartment. After being told to take R.J. or leave, Jernigan chose to leave. He later returned and entered the apartment without knocking, which he was not allowed to do. Pamela testified that she did not give Jernigan permission to re-enter the apartment. The jury could reasonably conclude that Jernigan entered the apartment without the effective consent of the owner, Pamela. *See Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980) (Hotel owner's testimony that Ellett had not received permission to enter the hotel "establish[ed] the absence of effective consent," even if the

door to the hotel was open when Ellett entered); *see also Simmons v. State*, No. 07-07-0282-CR, 2009 Tex. App. LEXIS 5932, at *13-15 (Tex. App.—Amarillo July 30, 2009, pet. ref'd) (not designated for publication) (Apartment owner's testimony that Simmons lacked permission to enter the apartment was sufficient to support the absence of effective consent); *Hardy v. State*, No. 05-06-00549-CR, 2007 Tex. App. LEXIS 4746, at *5-7 (Tex. App.—Dallas June 4, 2007, pet. ref'd) (not designated for publication) (Homeowner's testimony that she did not invite Hardy into the house on the day of the offense was factually sufficient to show lack of effective consent).

A neutral review of all the evidence demonstrates that the proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 11. Because the evidence is factually sufficient to support the jury's verdict, we overrule point of error two.

Having overruled Jernigan's two points of error, we affirm the trial court's judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed December 16, 2009
Do not publish
[CR25]