IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00274-CR

 

Rodney Allen Jernigan,

                                                                                    Appellant

v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 06-05099-CRF-85

 



MEMORANDUM  Opinion



 








            A jury convicted Rodney
Allen Jernigan of burglary of a habitation and the trial court sentenced him to
three years in prison.  In two points of error, Jernigan challenges the legal
and factual sufficiency of the evidence to support his conviction.  We affirm.

FACTUAL BACKGROUND

            Jernigan and his girlfriend Pamela
Richardson had an on and off relationship.  On the day of the offense, Jernigan
received Pamela’s permission to retrieve their child R.J. at Pamela’s
apartment.  When Jernigan arrived, he knocked on the door and Pamela’s mother Luedell
Richardson opened the door.  Jernigan entered the apartment and went upstairs
where he saw Anton Brown, Pamela’s new love interest, holding R.J.  Jernigan
asked, “Is that your baby?”  Brown handed R.J. to Pamela.  Brown testified that
Jernigan cursed at Pamela who stated, “I’m not here for your s---, Rodney” and
that Jernigan responded “F--- it.  I’m not taking her.”  Pamela testified that
she told Jernigan, “You either get [R.J.] or you need to leave.”  Jernigan
testified that Pamela merely told him that R.J. was not ready and that he
looked at Pamela in “disgust.”  Jernigan left the room without R.J. and went
downstairs.  Brown and Pamela heard the front door slam, but did not see
Jernigan leave the apartment.

Pamela’s daughter T.D. was sitting on
Pamela’s car talking on the telephone.  She had seen Jernigan arrive at the
apartment.  Jernigan testified that he parked next to Pamela’s car, but did not
see T.D.  T.D. testified that she later saw Jernigan exit the apartment.  About
ten to fifteen minutes later, T.D. saw Jernigan return, walk quickly towards
the apartment, and let himself into the apartment.

Inside the apartment, Brown and Pamela
heard someone coming up the stairs.  Brown turned to see Jernigan and the two
men became involved in a struggle.  Pamela yelled at the men to “stop.”  T.D.
heard the “ruckus” and entered the apartment.  Pamela instructed her to call
the police.  During the call, Jernigan stopped fighting, pushed past T.D., and
left the apartment.

According to Jernigan, he never left the
apartment, but waited for R.J. downstairs.  He had a brief discussion with Luedell
who then went upstairs to retrieve R.J.  Jernigan heard Luedell and Pamela
arguing and went upstairs to investigate.  He testified that T.D. was in the
room next door to Pamela’s room.  When he entered Pamela’s room, he and Brown
looked at each other and began fighting.

LEGAL SUFFICIENCY

In point one, Jernigan argues that the
evidence is legally insufficient to support his conviction because he had a
legal right to enter the apartment, given that he kept some belongings there
and Pamela had given him permission to enter the apartment for the purpose of
retrieving R.J., which consent had not been revoked.[1]

Standard of Review

Under legal sufficiency review, we determine
whether, after viewing all the evidence in the light most favorable to the
verdict, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.




Analysis

A person commits the offense of burglary
by entering a habitation without the effective consent of the owner, with the
intent to commit a felony, theft, or assault.  Tex.
Pen. Code Ann. §
30.02(a)(1) (Vernon 2003).  “Owner” means a person who has “title to
the property, possession of the property, whether lawful or not, or a greater
right to possession of the property than the actor.”  Tex. Pen. Code
Ann. § 1.07(a)(35)(A)
(Vernon Supp. 2009).

Jernigan once lived with Pamela in the
apartment.  Pamela alone signed the lease, but “Rodney Jernigan” was identified
as an “occupant.”  Pamela testified that this referred to her son “Rodney
Jernigan, Jr.”[2]
 T.D. was the only other named “occupant.”  Jernigan testified that he and Pamela
purchased furniture together and he moved his belongings into the apartment.  Pamela
testified that Jernigan paid some of the bills. 

Pamela later asked Jernigan to move out. 
Jernigan testified that he left some items behind, such as computer equipment
and clothing.  Jernigan’s sister confirmed that some of his belongings remained
at the apartment, such as plants and a blue chair.  Jernigan identified one
such item, a rack, from a photograph of the apartment.  His sister could not identify
any of Jernigan’s belongings from the photographs.  Pamela testified that none
of Jernigan’s belongings remained at the apartment.

After R.J.’s birth, Jernigan often
visited the apartment and sometimes spent the night.  He testified that Pamela
had been ill, so he assisted with bills and rent.  Pamela testified that Jernigan
stopped visiting regularly about two or three months after R.J.’s birth.  She
did not believe Jernigan had a key to the apartment.  She explained that
Jernigan was not allowed to walk into the apartment without knocking and had
never done so before.  Jernigan, however, testified that he did have a key to
the apartment, but did not use the key when separated from Pamela and always
knocked before entering the apartment.  He was not residing at the apartment at
the time of the offense and admitted that he could not come and go as he
pleased.  Both Pamela and T.D. testified that Jernigan had not been around for
months before the day of the offense.  Both Jernigan and his sister testified
that he moved out only three days before the offense.

It is undisputed that Jernigan first
entered the apartment with permission.  When he encountered Brown, however, Pamela
specifically instructed Jernigan to either take R.J. or leave the apartment.  The
jury could reasonably conclude that Pamela wanted Jernigan to leave, with or
without R.J., thereby withdrawing her consent to Jernigan’s continued presence
in the apartment.  See
Beatty v. State, No. AP-75,010, 2009 Tex. Crim. App. Unpub. LEXIS 167, at *13-14 (Tex. Crim. App. Mar. 11,
2009) (“To prove burglary, [Beatty] must have entered Click’s house after Click
withdrew her consent;” Beatty left the apartment after Click told him to do so
and later returned without her consent).

The jury could also reasonably conclude
that Pamela was the “owner” of the apartment and that Jernigan did not have a
legal right to be there absent Pamela’s consent.  Although he had previously
lived with Pamela, he was not listed as a tenant on the lease and he was not
allowed to freely enter the apartment.  See Mack v. State, 928 S.W.2d 219, 223 (Tex. App.—Austin
1996, pet. ref’d) (Although Mack’s name was on the lease, he “voluntarily abandoned those rights
on the date of the offense and had far less right, at that time, to control
of the apartment than did McKinley:” he “voluntarily moved out, removed almost
all of his possessions from the apartment, [] began living with his parents,”
“stopped paying rent or utilities,” was “repaid [] for his portion of the
deposit,” and “agreed not to visit the apartment unless he first called for
permission.”); see also Gregg
v. State, 881 S.W.2d
946, 952 (Tex. App.—Corpus
Christi 1994, pet. ref’d) (“[T]he evidence is sufficient for a rational trier
of fact to have found beyond a reasonable doubt that appellant, who had not
been a member of his wife's household for seven months, was not welcome there
and was not permitted to just enter in at will.”).  The jury could accept Pamela’s testimony that Jernigan did
not have a key to the apartment, had removed his belongings from the apartment,
and was not the “occupant” identified on the lease.  See Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000) (“The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
testimony, and it is also the exclusive province of the jury to reconcile
conflicts in the evidence.”).

Viewing all the evidence in the light most favorable
to the verdict, a rational trier of fact could have found the essential
elements of burglary of a habitation beyond a reasonable doubt.  Curry, 30 S.W.3d at 406; Jackson, 443 U.S. at 318-19, 99 S. Ct. at
2789.  The evidence is legally sufficient to support the verdict. 
We overrule point of error one. 

FACTUAL SUFFICIENCY

In point two, Jernigan contends that the
evidence is factually insufficient to show that (1) he left the apartment and
later returned to enter without permission; and (2) in the alternative,
re-entered the apartment without the effective consent of the owner.   

Standard of Review

Under factual sufficiency review, we ask
whether a neutral review of all the evidence demonstrates that the proof of
guilt is so weak or that conflicting evidence is so strong as to render
the jury’s verdict clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one
side.  Rather, we look at all the evidence on both sides and then make a
predominantly intuitive judgment.  Id.

Analysis

Jernigan testified that he came to the
apartment and left the apartment only one time.  He argues that T.D.’s
testimony is uncorroborated and, therefore, insufficient to show otherwise.  He
maintains that the jury struggled with the lack of corroboration. 
Specifically, the jury asked to review the police report and requested T.D.’s
testimony regarding Jernigan’s leaving and re-entering the apartment.  The
trial court read T.D.’s testimony to the jury.  The jury subsequently informed
the trial court that it was deadlocked.  The trial court released the jury for
lunch and, upon the jury’s return, responded to the jury’s request to hear
testimony of Officer Patrick McCarthy regarding “whose statements were taken on
the night of July 7 and if they were consistent with one another.”  McCarthy
had testified that Luedell and T.D. corroborated statements made by Brown and Pamela. 
This testimony was not read to the
jury.  Rather, the trial court read McCarthy’s testimony explaining that discrepancies
in statements would be important to include in his report.  The jury resumed
deliberations and convicted Jernigan.

“A burglary conviction may be supported
by the testimony
of one witness without corroborating
evidence.”  Lopez v.
State, No. 10-07-00325-CR, 2009 Tex. App. LEXIS 5853, at *5
(Tex. App.—Waco July 29, 2009, no pet.) (not designated for publication)
(citing Flournoy v. State, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984)). 
T.D.’s testimony alone supports a conclusion that Jernigan left the apartment
and later re-entered the apartment.  Additionally, Brown and Pamela both heard the front door slam, suggesting that Jernigan
left the apartment after being told to do so by Pamela. 
The jury, as the sole judge of the weight and credibility of the evidence, was
entitled to accept T.D.’s testimony that Jernigan left the apartment to later
return and reject Jernigan’s contrary testimony.  See Lancon v. State,
253 S.W.3d 699, 706-07 (Tex. Crim. App. 2008).

Moreover, the record indicates that Pamela withdrew her consent to Jernigan’s presence in the
apartment.  After being told to take R.J. or leave, Jernigan chose to leave. 
He later returned and entered the apartment without knocking, which he was not
allowed to do.  Pamela testified that she did not give
Jernigan permission to re-enter the apartment.  The jury could reasonably conclude
that Jernigan entered the apartment without the effective consent of the owner,
Pamela.  See Ellett v. State, 607 S.W.2d
545, 550 (Tex. Crim. App. 1980) (Hotel owner’s testimony that Ellett had not received permission to enter the
hotel “establish[ed] the absence of effective consent,” even if the door to the
hotel was open when Ellett entered); see also Simmons v. State, No.
07-07-0282-CR, 2009 Tex.
App. LEXIS 5932, at *13-15 (Tex. App.—Amarillo July 30, 2009, pet. ref’d) (not
designated for publication) (Apartment owner’s testimony that Simmons lacked
permission to enter the apartment was sufficient to support the absence of
effective consent); Hardy v. State, No. 05-06-00549-CR, 2007 Tex. App. LEXIS 4746, at *5-7 (Tex.
App.—Dallas June 4, 2007, pet. ref’d) (not designated for publication) (Homeowner’s
testimony that she did not invite Hardy into the house on the day of the
offense was factually sufficient to show
lack of effective consent).

A neutral review of all the evidence
demonstrates that the proof of guilt is not so weak nor the conflicting
evidence so strong as to render the jury’s verdict clearly wrong and manifestly
unjust.  Watson, 204 S.W.3d at 414-15;
Johnson, 23 S.W.3d at 11.  Because
the evidence is factually sufficient to support the jury’s verdict, we overrule
point of error two.

Having overruled Jernigan’s two points
of error, we affirm the trial court’s judgment.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed December 16, 2009

Do not publish

[CR25]

 

 









[1]               For purposes of his legal
sufficiency argument, Jernigan accepts that the jury chose to believe T.D.’s
testimony that he left the apartment.





[2]
              Rodney Jernigan, Jr. is Pamela and Jernigan’s first child.  R.J.
is their second child.