Elbert Michael HOMAN, Appellant,

v.

The STATE of Texas.

No. 578–99.

Court of Criminal Appeals of Texas.

May 31, 2000.

James W. Volberding, Tyler, for appellant.

Matthew Paul, State's Atty., Austin, for State.

## *O P I N I O N*

HOLLAND, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MEYERS, MANSFIELD, KELLER, PRICE, WOMACK, and KEASLER, J.J., joined.

Appellant was indicted for the capital murder of Stephanie Homan.[1] *See* TEX. PEN.CODE ANN. § 19.03(a)(2). The State opted not to seek the death penalty. Appellant pleaded not guilty to the indictment. Although the jury was instructed on both capital murder and the lesser offense of murder, they convicted appellant of capital murder as charged in the indictment. Appellant elected to have the trial court assess his punishment, and it sentenced appellant to life imprisonment. Appellant gave a written notice of appeal to the trial court.

On direct appeal, the Tyler Court of Appeals concluded that the evidence was insufficient to prove the charge of capital murder. *See Homan v. State*, No. 12–97–00046–CR (Tex.App.-Tyler February 5, 1999) (not designated for publication). The court of appeals did find, however, that there was sufficient evidence to prove

---

1. The indictment specifically alleged that appellant committed the murder of Stephanie Homan by strangulation in the course of committing or attempting to commit the offense of burglary of a habitation owned by Stephanie Homan.

the lesser included offense of murder. Therefore, relying upon *Bigley v. State*, 865 S.W.2d 26, 27 (Tex.Crim.App.1993), the court of appeals modified the judgment to reflect appellant's conviction for murder, charged by the trial court as a lesser included offense, and remanded the cause to assess punishment only. *See id.* The State sought review by this Court. We reverse the decision of the court of appeals and remand the cause for that court to consider appellant's points of error not addressed on original submission.

## I.

The State argues in its brief that the opinion of the Tyler Court of Appeals conflicts with prior decisions of this Court. The State adopts the court of appeals's version of the facts in this cause.[2] The State asserts this Court has previously concluded that in a capital murder prosecution for murder in the course of one of the enumerated felonies, the elements of the aggravating felony may "overlap" with the elements of the murder, and that the same conduct may serve as an element of the murder and as an element of the aggravating felony. The State argues that the Court of Appeals erred in its conclusion that the State cannot prove murder in the course of burglary by showing appellant unlawfully entered the property and thereafter committed murder.

In response, appellant argues that the state used the offense of murder twice in its case to establish he committed a capital murder. He contends that there must be two separate crimes: burglary, in which there was an entry with an intent to commit a felony other than the murder, and murder, with the intent to do so. Appellant cites no precedent in support of his argument, although he does rely on past dissenting opinions from this Court.[3]

## II.

The Tyler Court of Appeals concluded that the murder of the victim could not be used to make the entry into her home a burglary and, at the same time, use the burglary as the aggravating offense to make the murder into a capital murder. *See Homan,* slip op. at 3–4. It stated that an actor can be prosecuted for burglary where he makes an entry without a prior intent to commit a felony or theft,

2. The Tyler Court of Appeals provided the following account of the facts in this cause:

> Stephanie[Homan] was appellant's former wife and had custody of their two small children. The episode of violence, which led to Stephanie's death, began when appellant returned a phone call from Stephanie earlier in the day. In his confession, appellant stated that he had been drinking beer for several hours and called Stephanie when he got home at 10:30 or 11:00 p.m. He could hear people in the background and asked Stephanie what was occurring at her house. She told him that they [Stephanie's sister and Carlos Coleman were with her inside the mobile home] were getting high. Appellant asked where his children were, and she said they were with her. Angered by this admission, appellant rode his sister's bicycle five miles to Stephanie's home. The evidence generally reflects that when appellant arrived at Stephanie's home, he gained entrance in spite of her protests. Stephanie, her two children, her sister, and Carlos Coleman ("Coleman") were inside the mobile home. Appellant and Stephanie began arguing and fighting, at which time Stephanie proclaimed that she wished he was dead. Appellant seized a knife from the kitchen, gave it to her, and told her to kill him. Stephanie protested that she could not do it. The parties fought both inside and outside the trailer for approximately an hour and appellant was, at some point, cut with the knife. Stephanie's sister left to take Coleman home and to call 911, but left the children behind. During the continuing fight, appellant strangled Stephanie to death with the electrical cords of a radio and a fan.

*Homan,* slip op. at 1–2. The State adopted this account of the facts in its petition and brief before this Court. Appellant has not disputed this account of the facts. This Court is satisfied with the accuracy of this account of the facts.

3. *See Muniz v. State,* 851 S.W.2d 238, 264 (Tex.Crim.App.1993)(Clinton, J., dissenting); and *Fearance v. State,* 771 S.W.2d 486, 514 (Tex.Crim.App.1988)(Teague, J., dissenting), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

but then formulates the intent to commit the felony or theft after he has entered. *See id.* The Tyler Court believed, however, that it was necessary in a prosecution for capital murder for the State to show that the defendant formed the intent to commit the murder prior to entering the habitation if the State was going to appropriately use the burglary to elevate a murder to the status of capital murder. In other words, the court of appeals believed that the State had not proved capital murder if the actor formed the intent to murder after entry was made into the victim's home. The State argued in both its petition and in its brief that it appeared the Tyler Court of Appeals was attempting to apply some species of the merger doctrine in its opinion.

▆▆▆ We note the merger doctrine, however, does not apply to the instant capital murder. See *Barnard v. State,* 730 S.W.2d 703, 709 (Tex.Crim.App.1987).[4] Rather, it would be more accurate to describe appellant's claim in this cause as an argument that the State improperly bootstrapped to get a charge of capital murder. The court of appeals essentially decided that the State improperly used the intentional murder of Stephanie Homan as the circumstance transforming appellant's illegal entry of the habitation into a burglary, and then used the same intentional murder coupled with the burglary to establish the offense of capital murder. This Court rejected the same bootstrapping argument in *Fearance v. State,* 771 S.W.2d 486, 492–93 (Tex.Crim.App.1988), *cert. denied,* 492 U.S.

927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

This Court concluded in *Fearance* that appellant engaged in "felonious criminal conduct, specifically, at the time [the victim] was murdered. This conduct was a property offense. Therefore, there was a showing of felonious criminal conduct other than the assault which caused the death of [the victim]." *Id.* at 493. This Court has upheld capital murder convictions, concluding that the evidence sufficiently established the underlying felony of burglary by murder of the victim following the unlawful entry into the habitation. *Fearance v. State,* and *Matamoros v. State,* 901 S.W.2d 470, 474 (Tex.Crim.App.1995) (where evidence showed appellant entered the victim's habitation without permission and subsequently murdered the victim, this Court concluded the intent necessary to establish the felony of burglary was shown by the ultimate murder of the victim.) This Court has rejected other claims regarding bootstrapping in *Barnard v. State,* 730 S.W.2d at 708–09 and in *Barber v. State,* 737 S.W.2d 824, 835 (Tex.Crim.App.1987).

This Court reverses the decision of the court of appeals and remands this cause to the court of appeals for it to consider appellant's remaining points of error.

JOHNSON, J., delivered a dissenting opinion.

JOHNSON, J., filed a dissenting opinion.

I respectfully dissent. Appellant was convicted of capital murder. He was al-

4. Under Section 19.02(a)(3) of the Penal Code, the State is allowed to transfer the mental state from the commission of a separate felony to an independent homicide committed in the course of a separate felony. The merger doctrine of *Garrett v. State,* 573 S.W.2d 543 (Tex.Crim.App.1978), applies only to prosecutions for felony murder under Section 19.02(a)(3) where the underlying offense is manslaughter or a lesser included offense of manslaughter. *See Johnson v. State,* 4 S.W.3d 254, 257–58 (Tex.Crim.App.1999). In *Johnson,* this Court explained that it is improper under the felony murder statute to merge the mental states where the underlying felony is not an act separate and apart from the assault resulting in death. *Id.*

In contrast, in a capital murder prosecution, the murder is shown to be an intentional and knowing act in and of itself. There is "no transferred intent from a lesser offense to a greater offense under our capital murder statute." *See Barnard v. State,* 730 S.W.2d at 709. The merger doctrine of *Garrett* is inapplicable to a capital murder prosecution. *See Dowthitt v. State,* 931 S.W.2d 244 (Tex.Crim. App.1996).

leged to have committed capital murder because he "commit[ed] murder as defined under [Tex. Pen.Code § 19.02(b)(1) ] and ... [he] intentionally commit[ed] the murder in the course of committing ... burglary." Tex. Pen.Code § 19.03(a)(2). Burglary is defined, in relevant part, as "without the effective consent of the owner ... enter[ing] a habitation ... with intent to commit [or committing or attempting to commit] a felony." Tex. Pen. Code § 30.02(a)(1) & (3). In this case, the felony alleged was the murder itself. In other words, appellant was alleged to have committed capital murder, i.e., murder in the course of burglary, with the predicate felony for the burglary the same murder of the same victim.

As the majority acknowledges, this appears to be a case of "bootstrapping" to get a charge of capital murder. *Ante,* at 849. The majority dismisses this claim by citing to *Fearance v. State,* 771 S.W.2d 486, 492–93 (Tex.Crim.App.1988), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). Although there is some support in *Fearance* for this claim, there is little in the way of logic to support that precedent.

In *Fearance,* the indictment alleged two possible theories of capital murder: murder in the course of a burglary, for which the predicate was theft; and murder in the course of burglary, for which the predicate was the same murder. *Fearance,* 771 S.W.2d at 492 n. 1. In sustaining the conviction, we stated, in part, that

the indictment alleged and the proof showed that [the defendant] was engaged in felonious criminal conduct, specifically, burglary at the time Larry Faircloth was murdered. This conduct was a property offense. Therefore, *there was a showing of felonious criminal conduct other than the assault which caused the death of Larry Faircloth.*

*Fearance,* 771 S.W.2d at 493 (emphasis added). This appears to sustain the conviction on the basis of the first theory of capital murder, i.e., the one in which the predicate for the burglary was a theft which was separate and part from the murder. This rationale is supported by the following: (1) the fact that we detailed a burglary–by–theft which the defendant had allegedly committed earlier the same evening that Faircloth was murdered, at a residence near Faircloth's (*id.* at 490); (2) our reliance upon *Aguirre v. State,* 732 S.W.2d 320 (Tex.Crim.App.1987). In *Aguirre,* we stated that

The [defendant] testified at trial that on the day of the offense he had gone to his ex-wife's home to speak to her about leaving the children alone at night. When his ex-wife refused to let him into the house, [the defendant] went to his truck and retrieved his shotgun. He testified that he shot at the door in order to open it and did not consider the fact that someone could have been behind the door. Unbeknownst to [the defendant], one of his children was standing behind the door and was killed by the blast fired from [the defendant's] shotgun.

If indeed, the [defendant] was engaged in felonious criminal conduct, that is *committing felony criminal mischief by attempting to blow open a door with a shotgun,* this conduct was clearly a property offense. *In the furtherance of this offense, the deceased was shot and killed.* Unlike the situation in *Garrett v. State,* [573 S.W.2d 543 (Tex.Crim.App. 1978) ], *the [defendant's] act of criminal mischief and the deceased's resulting homicide were not one in the same.*

*Aguirre,* 732 S.W.2d at 325 (emphases added); *see also Fearance,* 771 S.W.2d at 493. Thus, this portion of *Fearance* does not support the type of bootstrapping evident in the instant case.

We could have resolved the bootstrapping issue present in the second theory of capital murder in *Fearance* in the same manner. Instead, however, with what appears to be reasoning contradictory to the reasoning used to resolve the previous

ground, we went on to summarily dismiss appellant's complaint of bootstrapping on this theory by reliance on a previous case, *Barnard v. State,* 730 S.W.2d 703, 708–709 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). In *Barnard,* we relied on an earlier court of appeals case, *Randle v. State,* 697 S.W.2d 13 (Tex.App.—Houston [14 [th] Dist.] 1985, no pet.). Yet, *Randle* does not support such bootstrapping.

In *Randle,* the defendant complained that his conviction for capital murder, i.e., murder in the course of aggravated robbery, was invalid because the aggravated robbery involved the same assault which caused the death of the victim. *Id.* at 16. The court appeals rejected appellant's complaint because

> "[t]he Legislature ... has found it appropriate to authorize the imposition of the death penalty in cases in which a murder occurs during the commission or attempted commission of a robbery, which might be completed either by assault or by threat. *The significant feature of a robbery offense is that the violence or threatened violence occurs during the course of the commission of theft ... It is this pecuniary motive for robbery-murder that renders it more atrocious.*
> When this legislative purpose is recognized, the fact that robbery and murder might have a shared element becomes irrelevant."

*Id.* at 16–17 (emphasis added). Thus it is clear that, in *Randle,* the felony underlying the capital murder charge was aggravated robbery, a criminal act separate and apart from the murder itself. *Barnard* presents a similar scenario: a robbery–murder. *Barnard,* 730 S.W.2d at 708. Yet, our subsequent case law has misinterpreted those cases as explicitly allowing the type of bootstrapping complained of in the instant case. *See, e.g., Fearance, supra; Boyd v. State,* 811 S.W.2d 105, 114 (Tex.Crim.App.1991)("This court has held that an unlawful entry into a habitation

with the intent to commit murder will satisfy the burglary element of a capital murder charge;" *citing Fearance*), *cert. denied,* 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991); *Matamoros v. State,* 901 S.W.2d 470, 474 (Tex.Crim.App. 1995)("In capital murder prosecution, the requirement that a felony be committed is satisfied by the actual murder of the victim;" *citing Fearance*); *Whitaker v. State,* 977 S.W.2d 595 (Tex.Crim.App.1998)("An unlawful entry into a habitation with the intent to commit murder will satisfy the burglary element of a capital murder charge;" citing *Fearance* and *Boyd*), *cert denied,* 525 U.S. 1108, 119 S.Ct. 878, 142 L.Ed.2d 777 (1999).

The majority's decision relies upon case law which has no basis in logic and which misinterprets earlier precedent. Because the court does not take this opportunity to reevaluate this issue and set things right, I dissent.