**Affirmed and Opinion filed October 1, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00690-CR

**HERBERT GARFIELD GARDNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1372136**

## O P I N I O N

Appellant, Herbert Garfield Gardner, appeals from his conviction for capital murder. A jury found appellant guilty, and the trial court sentenced him to mandatory life in prison. While appellant concedes that he intentionally murdered the complainant, he contends in two issues that the evidence was insufficient to prove that he did so in the course of committing a burglary, the aggravating factor that elevated the murder to a capital offense. We affirm.

## *Background*

On December 23, 2012, appellant shot and murdered complainant Connie Bowie inside her home in Houston, Texas. It was undisputed at trial that Bowie owned and lived in the home at the time of the murder and that previous to the murder, appellant was in a romantic relationship with Bowie and had lived with her at the property for around four years.

Officer J.W. James of the Houston Police Department testified that on November 2, 2012, he responded to a disturbance call at the home to find appellant and Bowie arguing in the street. James reported that Bowie appeared fearful and had asked appellant to leave. Appellant was then arrested for public intoxication. Records obtained from the Sun Suites Hotel and admitted into evidence revealed that appellant began renting a room at the hotel on the same day as the disturbance, November 2, 2012, and continued to rent a room there until December 23, 2012, the day before the murder.[1]

Terrell Lewis testified that he was a friend of appellant's prior to the murder and went out drinking and taking drugs with appellant on the evening of December 22, 2012 until the early morning hours of December 23. According to Lewis, appellant had several suitcases and bags in his car at the time and explained that he had "been staying in a room." When Lewis and appellant left a club for appellant to drive Lewis home, appellant instead drove to Bowie's home and backed his car into the driveway.[2] Appellant exited but left the vehicle running. He then approached the home and began banging on the front door. At that point, Lewis could hear appellant and Bowie talking through the door. Appellant sounded

---

[1] The murder occurred in the early morning hours of December 23, 2012.

[2] Lewis identified the house in a photograph that was otherwise established to be of the home.

angry. Bowie told him "[j]ust come back, come back," "[c]ome back. I'm sleeping," and "[c]ome back in the morning, we'll talk." Lewis then heard a window break, and when he turned to look at the house again, he could no longer see appellant. Lewis called to appellant "[w]hat . . . you doing?" and moved to the driver's side of the car. When appellant did not come out of the house after a few seconds, Lewis drove to the end of the street, called 9-1-1, and reported "domestic violence."

Officer Anthony Thomas testified that on the morning of December 23, 2012, he was dispatched to the home for an assault in progress. As he approached, he heard a gunshot and his rear window "exploded." Thomas then saw a man standing about ten feet away pointing a shotgun at him.[3] The man fired twice more as Thomas sped away. After reporting that shots had been fired, Thomas returned to the area and saw the man with the shotgun enter a red Dodge Nitro and drive away. Thomas and two other police vehicles gave chase, soon joined by several others. The Nitro eventually crashed into a house, and appellant was identified as the driver and transported by ambulance to the hospital. An officer described appellant at that point as having blood on him "from head to toe." Officer Jarvis Robins rode with appellant in the ambulance and reported that on the ride, appellant said, "I should not have shot her," and "I'm going to hell."

Officer Rodrick Standfield testified that he also responded to the crime scene that morning and discovered Bowie's body lying on the front porch with one foot still inside the window. She appeared to have suffered shotgun wounds to the face and torso. The inside of the home appeared to have been ransacked; broken glass and blood drops were "all over" and there were "pools of blood in every room."

---

[3] Under the circumstances, Thomas was unable to make a positive identification of the man with the shotgun.

Standfield also observed spent shotgun shells.

Sergeant Daniel Nunez, a crime scene unit supervisor, investigated the murder scene and concluded that someone had used "a good amount of force" to break into the home through the front window. Blood patterns near the window were "consistent with someone breaking in, pushing in through the window," cutting an arm, and starting to bleed. Sergeant Richard Rodriquez with the HPD Homicide Division opined based on his experience and training that the window initially was broken by someone coming in through the window and not by Bowie having fallen out through the window. He further explained that it appeared someone had walked through the house "spurting out blood." When appellant was arrested, he had two severe lacerations on his arm, which Rodriquez stated would explain the blood pattern observed at the home. Subsequent DNA testing of blood samples taken at the home produced positive matches to appellant's blood. Rodriquez additionally noted that only two items found in the home appeared to belong to a male—a pair of jeans and a pair of boots—and that a vehicle registration receipt found among appellant's possessions and dated November 6, 2012, showed a different address than Bowie's home for appellant.

The jury charge permitted the jury to find appellant not guilty, guilty of murder, or guilty of capital murder. The jury found appellant guilty of capital murder.

### Standards of Review

As charged in this case, a person commits capital murder if he intentionally or knowingly causes an individual's death while in the course of committing or attempting to commit burglary. Tex. Pen. Code § 19.03(a)(2). A person commits burglary if, without the effective consent of the owner, he: (1) enters a building or habitation with intent to commit a felony, theft, or an assault, or (2) enters a

4

building or habitation and commits or attempts to commit a felony, theft, or assault. Tex. Pen. Code § 30.02(a)(1), (3).

In assessing whether evidence is sufficient to support a conviction, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We may not substitute our judgment for that of the fact finder; rather, we defer to the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

### *Unlawful Entry*

In his first issue, appellant contends that the evidence was insufficient to prove the unlawful entry element of burglary. Appellant emphasizes that he had lived at the home where the murder occurred for four years prior to the murder, the address was listed as his residence on his driver's license, and neighbors observed him regularly coming and going from the home. On that basis, he insists he had an equal right to possession of the property and thus could not be found to have entered without the owner's effective consent.

The record, however, contains numerous pieces of evidence indicating that, while appellant may at one time have had a right to enter and possess the premises, he had lost that right before the murder occurred. This evidence includes:

5

- Complainant was the sole owner of the property as listed on the property deed.

- On November 2, 2012, more than seven weeks before the murder, a police officer responding to a disturbance call at the residence heard complainant ask appellant to leave.

- Hotel records beginning on the same date, November 2, 2012, show appellant rented a hotel room from that date until the day before the murder.

- A friend of appellant's, who was with appellant for several hours immediately prior to the murder and rode to the crime scene with appellant, reported appellant had several suitcases and bags in his car and told the friend he had "been staying in a room." The same friend stated that when they arrived at the house, appellant banged on the door and complainant told him to come back later. The friend then heard glass break and no longer saw appellant. The clear implications being that appellant had not been staying at the house and did not have a key, the complainant did not want appellant to enter the house at that time, and appellant nonetheless entered by breaking into a window.

- A front window of the home was broken and blood was observed around the window and throughout the house, suggesting an intruder had cut his arm while entering through the window and then walked around the house bleeding. When found, appellant had two severe lacerations on his arm. Blood inside the home was determined to be appellant's.

- After the murder, a search of the premises revealed that the only male-related items in the home were a pair of jeans and a pair of boots, suggesting no male was living in the home at the time of the murder.

- A vehicle registration receipt discovered among appellant's possessions and dated November 6, 2012, showed a different address than the complainant's home for appellant.

This evidence was sufficient for a rational jury to conclude that appellant no longer lived at the home and no longer had the owner's consent to enter the home

at the time of the murder. *See, e.g., Gregg v. State*, 881 S.W.2d 946, 952 (Tex. App.—Corpus Christi 1994, pet. ref'd) ("[T]he evidence is sufficient for a rational trier of fact to have found beyond a reasonable doubt that appellant, who had not been a member of his wife's household for seven months, was not welcome there and was not permitted to just enter in at will."); *Hudson v. State*, 799 S.W.2d 314, 315-16 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (holding burglary defendant had lost right of possession to girlfriend's apartment when, although they once lived together, she later made him move out). The evidence further supports the conclusion that complainant, the homeowner, denied appellant entry shortly before the murder and appellant then forced his way in through a window.[4]

Because the evidence was sufficient to prove the unlawful entry element of burglary, we overrule appellant's first issue.

### *Commission of a Felony*

In his second issue, appellant contends the evidence was insufficient to prove that when he entered complainant's home, he committed or intended to commit a felony, theft, or assault. Appellant primarily argues under this issue that the State impermissibly attempted to use his murder of complainant in two ways: to establish the murder requirement for capital murder and to establish the felony component of the underlying burglary in order to elevate the murder to capital murder. As the State points out and appellant concedes, however, the Court of Criminal Appeals has held in several cases that a murder occurring after a break-in

---

[4] During oral argument, appellant's counsel pointed out that there was no evidence regarding what, if anything, had transpired on the day of the murder between appellant and the complainant before he arrived at the house. Counsel even speculated that appellant may have been moving back in and simply forgot his key. This argument, however, ignores the evidence suggesting appellant broke in while the complainant was inside the home telling him to come back later. That testimony, along with all of the evidence recited in the text above, clearly supports the conclusion that appellant did not have permission to enter the premises, much less an equal right to possession of the premises on the day of the murder, as counsel suggests.

can indeed serve as both the basis for the murder charge and the underlying felony required for burglary. *See Gardner v. State*, 306 S.W.3d 274, 287 (Tex. Crim. App. 2009) ("In a prosecution for capital murder based on burglary, the requirement that a felony be intended is satisfied by the murder of the victim."); *Homan v. State*, 19 S.W.3d 847, 848 (Tex. Crim. App. 2000) (reversing court of appeals which held the murder of complainant could not be used to turn entry into home a burglary); *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995) (holding evidence was sufficient to prove burglary component of capital murder where defendant entered complainant's home without his consent and killed complainant).

Nonetheless, appellant urges this court to adopt the reasoning set forth in a dissent in *Homan*, wherein the dissenting justice argued that it would be illogical to allow the State to use the murder of the complainant to "bootstrap" a murder offense into a capital murder offense. 19 S.W.3d 849-51 (Johnson, J., dissenting). Of course, under stare decisis, this court is bound to follow the precedent established by the Court of Criminal Appeals majority. *See Lewis v. State*, 448 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see also State of Texas ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."); *Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation under the dictates of vertical stare decisis.").

Appellant additionally attempts to distinguish the several Court of Criminal

Appeals cases on this issue, arguing that each of them involved other aggravating factors that are not present in this case. Whether or not the factors noted actually were present in these cases, it is clear that they played no role in the higher court's analysis. In *Gardner*, *Homan*, and *Matamoros*, the Court held that it was the murder of the complainant that completed the burglary, not another aggravating factor. *See Gardner*, 306 S.W.3d at 287; *Homan*, 19 S.W.3d at 848; *Matamoros*, 901 S.W.2d at 474. Accordingly, the lack of other aggravating factors in this case does not necessitate reversal.

Because the evidence was sufficient to prove appellant committed a felony upon his unlawful entry into complainant's home, we overrule his second issue.

The trial court's judgment is affirmed.


/s/ Martha Hill Jamison
   Justice


Panel consists of Justices Jamison, McCally, and Wise.
Publish — TEX. R. APP. P. 47.2(b).

9