

# IN THE
# TENTH COURT OF APPEALS

## No. 10-15-00378-CR

**LARSON EDWIN MOORE III,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 87th District Court
### Freestone County, Texas
### Trial Court No. 14-030-CR

## MEMORANDUM OPINION

In two issues, appellant, Larson Edwin Moore III, challenges his capital-murder conviction. *See* TEX. PENAL CODE ANN. § 19.03 (West Supp. 2016). Specifically, Moore contends that the evidence is legally insufficient to support his conviction and that the jury charge did not properly instruct the jury that the burglary in support of the capital-murder conviction must be directed at someone other than the victim that was murdered. We affirm.

# I. LEGAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Moore asserts that the evidence supporting his conviction is insufficient because "the evidence shows that appellant's purpose in entering the victim's house was to commit a felony against the victim (not against the victim's brother as the State argued)." In other words, Moore argues that the State improperly bootstrapped to get a charge of capital murder.

## A. Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved

the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

### B. Discussion

Here, the indictment charged Moore with the offense of capital murder under section 19.03 of the Penal Code and provided the following allegations:

Defendant, on or about the 9th day of February A.D., 2014, and before the presentment of this indictment, in the County and State aforesaid,

did then and there intentionally cause the death of an individual, namely Marjorie Pevehouse, by stabbing Marjorie Pevehouse with a sharp edged instrument and striking her in the head with an object unknown to the Grand Jury, and the defendant was then and there in the course of committing or attempting to commit the offense of burglary of a habitation of Marjorie Pevehouse, who was the owner of said habitation . . . .

Section 19.03 of the Penal Code provides the following:

(a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and:

. . . .

(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat . . . .[1]

TEX. PENAL CODE ANN. § 19.03. Furthermore, section 30.02(a), entitled "Burglary," states that:

(a) A person commits an offense if, without the effective consent of the owner, the person:

(1) Enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

(2) Remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) Enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

---

[1] "'[I]n the course of committing' is defined as conduct occurring during an attempt to commit, during the commission of, or in immediate flight from, the forbidden behavior." *See Griffin v. State*, 491 S.W.3d 771, 774-75 (Tex. Crim. App. 2016) (citing *Rivera v. State*, 808 S.W.2d 80, 93 (Tex. Crim. App. 1991)).

*Id.* § 30.02(a) (West 2011).

At trial, Brent Watson, a forensic scientist in the DNA section of the Texas Department of Public Safety Crime Lab, testified that the front-door jamb of the victim's house was damaged and showed "that there could potentially be a forced entry into the residence." Jake Burson, a Ranger with the Texas Rangers Division, agreed with Watson's conclusion and stated that: "The door frame was split. In addition to the door frame being spilt, there was also a shoe print on the door which is a fairly good indication the door was forced open." Further, upon entering the residence, investigators observed Pevehouse's body covered in blood, as well as a bloody $100 bill in her left hand. And a few feet away from Pevehouse's body was a knife.

Dr. Emily Ogden, a medical examiner at the Dallas County Medical Examiner's Office, testified that Pevehouse had multiple stab and blunt-trauma wounds around her head and chest—none of which would have, by themselves, immediately caused death. Dr. Ogden noted that, based on the severity, extent, and detail of the injuries, Pevehouse struggled with her killer prior to her death. The ultimate cause of Pevehouse's death was "[s]harp and blunt force injuries."

Moore's uncle, Charles Wright, testified that, on the night of the incident, Moore came to his house. Wright noticed that Moore had blood on his face and clothes. Wright asked Moore if he had been hurt, but Moore simply moved his finger at him. Moore asked Wright for a gun; however, Wright did not have a gun at the residence. Later,

Moore picked up a pen on the table and wrote on a sheet of paper. In very bad handwriting, Moore wrote, "I killed her." Wright also opined that Moore was acting very strangely that night. In particular, Moore hit Wright in the mouth, drawing blood and knocking out two teeth; Moore demanded that Wright leave his own house; Moore kicked in walls at Wright's house; and Moore spoke in a strange and hard-to-understand manner.

Sergeant William Flores of the Texas Rangers testified that he had expertise in blood analysis. Sergeant Flores analyzed the clothing that Moore wore on the night of the incident and determined that there was blood on Moore's jeans, long-sleeved shirt, shoes, and short-sleeved t-shirt. Sergeant Flores characterized the blood as "saturation" and "spattering" stains and noted that subsequent DNA testing revealed that the blood on Moore's clothing was Pevehouse's and that the DNA of Pevehouse and Moore was mixed together.[2] Furthermore, when asked about the conclusions drawn from his investigation of the incident, Sergeant Flores opined:

> My written conclusion on the examination is that Marjorie Pevehouse died as a result of multiple sharp force injuries and blunt force traumas reported in the SWIFS autopsy report analysis of the digital images indicates that active and dynamic blood shedding event occurred at the scene. That's my evaluation.

---

[2] Sergeant Flores defined a "saturation" stain as "an accumulation of liquid, blood and absorbent material." He later noted that a "spatter" stain is:

> a stain that's been produced from blood that's been moved through the air due to an impact. So if there was liquid here and it was impacted the liquid that flew away from that impact area would be spatter in motion and then when it hit another surface it would create a spatter stain.

A DNA analysis of blood recovered from clothing worn by Larson Moore indicated a single source DNA profile of Marjorie Pevehouse was present as follows on this clothing: in 6 of the 11 stains on the jeans, 3 of the 8 stains on the shirt, the long sleeve shirt—2 of 3 stains on the shoes and— and 1 of the 5 stains identified on the black t-shirt.

. . . .

It is my opinion that Larson Moore was present in the crime scene at the time that Marjorie Pevehouse received blood letting injuries and while Marjorie Pevehouse's blood was in dynamic motion within that crime scene.

Despite the aforementioned evidence, Moore contends that section 19.03(a)(2) of the Penal Code does not apply when a defendant enters a home for the sole purpose of murdering the victim. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). Essentially, Moore argues that the State improperly used the intentional murder of Pevehouse as a circumstance transforming Moore's purported illegal entry of the habitation into a burglary, and then used the same intentional murder coupled with the burglary to establish the offense of capital murder.

In response to Moore's contention, the State directs us to the Court of Criminal Appeals's decision in *Homan v. State*. *See generally* 19 S.W.3d 847 (Tex. Crim. App. 2000). In *Homan*, appellant was indicted for the capital murder of Stephanie Homan, though the State opted not to seek the death penalty. *Id.* at 847. Appellant pleaded not guilty to the indictment, and the jury was instructed on both capital murder and the lesser-included offense of murder. *Id.* Ultimately, the jury found appellant guilty of capital murder, and

the trial court sentenced appellant to life imprisonment. *Id.* On appeal, the Tyler Court

of Appeals determined that the evidence was insufficient to prove the charge of capital

murder, but upheld appellant's conviction on the lesser-included offense of murder. *Id.*

at 847-48. "The Tyler Court of Appeals concluded that the murder of the victim could

not be used to make the entry into her home a burglary and, at the same time, use the

burglary as the aggravating offense to make the murder into a capital murder." *Id.* at 848.

In reversing the Tyler Court of Appeals, the Court of Criminal Appeals noted the

following:

> We note the merger doctrine, however, does not apply to the instant capital
> murder. *See Barnard v. State*, 730 S.W.2d 703, 709 (Tex. Crim. App. 1987).
> Rather, it would be more accurate to describe appellant's claim in this cause
> as an argument that the State improperly bootstrapped to get a charge of
> capital murder. The court of appeals essentially decided that the State
> improperly used the intentional murder of Stephanie Homan as the
> circumstance transforming appellant's illegal entry of the habitation into a
> burglary, and then used the same intentional murder coupled with the
> burglary to establish the offense of capital murder. This Court rejected the
> same bootstrapping argument in *Fearance v. State*, 771 S.W.2d 486, 492-93
> (Tex. Crim. App. 1988), *cert. denied*, 492 U.S. 927, 109 S. Ct. 3266, 106 L. Ed.
> 2d 611 (1989).
>
> This Court concluded in *Fearance* that appellant engaged in
> "felonious criminal conduct, specifically, at the time [the victim] was
> murdered. This conduct was a property offense. Therefore, there was a
> showing of felonious criminal conduct other than the assault which caused
> the death of [the victim]." *Fearance*, 771 S.W.2d at 493. This Court has
> upheld capital murder convictions, concluding that the evidence
> sufficiently established the underlying felony of burglary by murder of the
> victim following the unlawful entry into the habitation. *Fearance v. State*,
> and *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995) (where
> evidence showed appellant entered the victim's habitation without
> permission and subsequently murdered the victim, this Court concluded

> the intent necessary to establish the felony of burglary was shown by the ultimate murder of the victim.) This Court has rejected other claims regarding bootstrapping in *Barnard v. State*, 730 S.W.2d at 708-09 and in *Barber v. State*, 737 S.W.2d 824, 835 (Tex. Crim. App. 1987).

*Id.* at 849.

As noted earlier, the record shows that the front-door jamb to Pevehouse's residence was damaged and that there was a footprint on the front door. The State's witnesses characterized these facts as evidence of forced entry, and the jury could have reasonably concluded that Moore entered Pevehouse's residence without permission. And similar to *Fearance*, *Homan*, and *Matamoros*, the evidence in this case reveals that Moore engaged in felonious criminal conduct at the time that Pevehouse was murdered. *See id.* at 849; *see also Matamoros*, 901 S.W.2d at 474; *Fearance*, 771 S.W.2d at 493. This conduct was a property offense. Thus, there was a showing of felonious criminal conduct other than the assault that caused the death of Pevehouse. Accordingly, in light of *Fearance*, *Homan*, and *Matamoros*, we reject Moore's bootstrapping argument. *See Homan*, 19 S.W.3d at 849; *see also Matamoros*, 901 S.W.2d at 474 ("In a capital murder prosecution, the requirement that a felony be committed is satisfied by the actual murder of the victim. . . . That requirement was met in this case. As to the absence of consent, the evidence is sufficient to establish that Goebel was sleeping in his bed when appellant entered the house without the victim's knowledge or consent and that appellant surprised and killed him."); *Fearance*, 771 S.W.2d at 493. Moreover, viewing the evidence in the light most favorable to the jury's verdict, we conclude that there is sufficient

evidence to support Moore's conviction for capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We therefore overrule Moore's first issue.

## II. THE JURY CHARGE

In his second issue, Moore complains about the jury charge. In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

The record reflects that Moore did not object to the jury charge; thus, the record must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of

the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

Moore's second issue is premised on his first issue. Specifically, Moore asserts that:

> If this Court concludes that there is somehow evidence to support the State's theory that appellant intended to murder or harm the victim's brother when he entered the victim's home, it should nevertheless reverse for a new trial because the jury charge does not adequately instruct the jury that the burglary, to support capital murder, must be directed at someone other than the victim that was murdered. The charge suggests that appellant is guilty of capital murder even if he entered the home with the intent to kill the victim.

As mentioned earlier, the Court of Criminal Appeals has upheld capital-murder convictions, concluding that the evidence sufficiently established the underlying felony of burglary by murder of the victim following the unlawful entry into the habitation. *Homan*, 19 S.W.3d at 849 (citing *Matamoros*, 901 S.W.2d at 474; *Fearance*, 771 S.W.2d at 493). Moreover, the charge in this case included instructions on both capital murder and the lesser-included offense of murder. The jury unanimously concluded that Moore was guilty of capital murder tied to the burglary of Pevehouse's habitation.

After reviewing the charge and the *Homan*, *Fearance*, and *Matamoros* decisions, we cannot say that the charge instruction for capital murder is erroneous. *See id.*; *see also*

*Matamoros*, 901 S.W.2d at 474; *Fearance*, 771 S.W.2d at 493.  Accordingly, we overrule

Moore's second issue.

### III.    CONCLUSION

Having overruled both of Moore's issues on appeal, we affirm the judgment of the

trial court.


                                        AL SCOGGINS
                                        Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed November 23, 2016
Do not publish
[CRPM]

