GROSS, J.
 

 Atari Downs appeals his conviction for aggravated battery with a firearm. We reverse, because testimony about a gun unrelated to the crime and unconnected to Downs was improperly admitted into evidence.
 

 ■ The victim testified that he met Downs through Lamarcus Cooper, who lived in a different building in the same apartment complex. The night of the shooting, the victim, Downs, and a few other people had been at Cooper’s place until one or two in the morning. The victim returned home and Cooper called him about Downs. At about 5:30 a.m., Downs knocked on the victim’s door a couple of times and asked him to come out and talk. When the victim opened the door and stepped out, Downs looked startled, pulled out a gun, and shot the victim in the shoulder.
 

 The victim remembered identifying two people from a photo line-up. It did not take long for him to identify Downs. He did not immediately say who shot him, because he was not sure whether there would be any retaliation.
 

 On cross-examination, the victim agreed that Cooper’s roommate was a man named Nicholas McGirt. The victim denied that he used any drugs that night. Initially he told police he had been shot by someone named Terrence, because he thought that was Downs’s first name. Terrence was the name of Downs’s brother. Up to the time of the shooting, the victim knew Downs only by his nickname, Boosie.
 

 Cooper recounted a version of the facts that placed the victim in a more unflattering light. Cooper said that on the night of the shooting, he, Downs, the victim, and another guy were drinking and snorting cocaine while they made music. After the party broke up, Downs thought the victim had taken some drugs from him. Cooper called the victim to ask whether he had taken them. Downs left Cooper’s place to go to the store for cigarettes. When Downs returned from the store, he was sweaty. He then changed clothes and left. Cooper stated he had never seen Downs with a gun. To Cooper’s knowledge, Downs did not own a gun.
 

 On redirect, Cooper testified that Downs did not have a bedroom in the apartment. He slept in the living room. Cooper and McGirt used the bedrooms, and Downs kept his clothes in Cooper’s room. Over objection, Cooper testified that a gun was found in his apartment the night of the shooting, that the gun was not his, and that he had never seen it before. The gun was found in McGirt’s bedroom. A crime scene investigator established that although a casing had been found at the
 
 *596
 
 shooting scene, no gun had ever been matched to it. A detective testified that the firearm found in McGirt’s bedroom “had nothing to do with this case.” It was not an automatic, the type of gun used in the shooting.
 

 In closing argument, Downs’s defense was that someone else, perhaps Cooper, had been the shooter. On closing, the state argued that the gun found in McGirt’s bedroom was proof that Downs had access to guns in the apartment:
 

 Now, the gun that was found in the house was not the gun used in this case, I concede that. But the reason I brought that fact out is to show you that there is access to guns. Mr. Cooper may have said I’ve never seen Mr. Downs with a gun, but there’s access to guns. There’s guns in the apartment. And Mr. Cooper also said, no, I’m not with him 24 hours a day, I don’t know every single thing that he does. Could he have gotten a gun? Yes. That, again, not unreasonable. That’s the purpose of me bringing out a gun.
 

 The trial court erred when it overruled Downs’s objection to evidence about the gun which was found in Cooper’s apartment and was unrelated to this case.
 

 Whether the gun was properly admitted into evidence presents a question of relevance.
 

 Evidence must be relevant in order to be admissible.
 
 See
 
 § 90.402, Fla. Stat. [ (2009) ]. Relevant evidence is defined as evidence “tending to prove or disprove a material fact.” § 90.401, Fla. Stat. [ (2009) ]. While all admissible evidence must be relevant, not all relevant evidence is admissible; section 90.403 mandates that “[rjelevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice.” § 90.403, Fla. Stat. [(2009)].
 

 O’Connor v. State,
 
 835 So.2d 1226, 1230 (Fla. 4th DCA 2003). Generally, where the evidence at trial does not link a seized gun to the crime charged, the gun is inadmissible in evidence.
 
 Id.
 
 at 1231. A gun different than the one used in a crime is not relevant to prove that the crime occurred.
 
 Id.
 
 “Any marginal relevance in this type of testimony [is] substantially outweighed by the danger of unfair prejudice” under section 90.403.
 
 Id.
 

 Even where a gun has a stronger connection to a defendant than the gun in this case, we have held that it should not be admitted into evidence if it is not connected to the crime charged. For example, in
 
 Rigdon v. State,
 
 621 So.2d 475 (Fla. 4th DCA 1993),
 

 the defendant was charged with attempted murder. We concluded that the trial court erred in admitting into evidence a small semi-automatic weapon which the police found under the defendant’s bed. We reasoned that the “exhibit did not tend to prove or disprove a material fact as it had no connection whatsoever to the charged offense.”
 
 Id.
 
 at 478.
 

 O’Connor,
 
 835 So.2d at 1231;
 
 see also Fugate v. State,
 
 691 So.2d 53, 54 (Fla. 4th DCA 1997) (holding that trial court erred in admitting into evidence a handgun owned by the defendant which was found some distance from the crime scene of an aggravated assault, where there was no link to the charged offense);
 
 Sosa v. State,
 
 639 So.2d 173, 174 (Fla. 3d DCA 1994) (holding that trial court erred in admitting bullets found in defendant’s vehicle where defendant was charged with firing handgun at victim’s car, since there was no link whatsoever established between the bullets and the defendant’s case). In this case, the state did not demonstrate
 
 any
 
 connection of the gun to Downs; it was
 
 *597
 
 found in McGirt’s bedroom and Downs slept in the living room and used Cooper’s bedroom.
 

 We do not find the admission of testimony about the gun to be harmless error. There is a “reasonable possibility that the error affected the verdict.”
 
 Cooper v. State,
 
 48 So.3d 42, 43 (Fla.2010) (quoting
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986)). After the shooting, the victim did not immediately identify Downs as the shooter. Holes permeated the witnesses’ stories. The jury wanted to see both Cooper’s and the victim’s depositions, which had been used to establish that their stories had changed over time. There was evidence that the shooter was wearing Cooper’s clothing. There was the suggestion that there may have been more to the case than the victim disclosed in his testimony. Finally, in closing argument, the prosecutor portrayed the improperly admitted evidence as indicative of guilt.
 
 See Zama v. State,
 
 54 So.3d 1075, 1078 (Fla. 4th DCA 2011) (holding that it was error for the state to present evidence that defendant possessed a bullet-proof vest and then argue in closing that the vest was not relevant, because the “fact that he possessed a bullet-proof vest, appellant argues, unfairly prejudiced him as it served no purpose but to inflame the jury and suggest he was of bad character and had a propensity for gun violence”).
 

 Reversed and remanded for a new trial.
 

 STEVENSON and TAYLOR, JJ., concur.