**Affirmed and Memorandum Opinion filed June 11, 2019.**



**In the**

# Fourteenth Court of Appeals

---

## NO. 14-17-00613-CR

---

### ALVARO ANGEL RODRIGUEZ, Appellant

**v.**

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1451265**

---

## MEMORANDUM OPINION

A jury found appellant Alvaro Angel Rodriguez guilty of capital murder. The trial court assessed punishment at life imprisonment without parole. Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(2). On appeal, appellant brings five issues. First, he asserts the trial court erred by failing to instruct the jury that another individual was an accomplice as a matter of law. In his second and third issues, he contends the trial court abused its discretion by admitting as evidence photographs that were irrelevant and unfairly prejudicial. In his fourth issue,

appellant asserts the trial court erred by denying his motion for new trial. Fifth and finally, appellant complains that Penal Code section 19.03 is unconstitutional as applied to him. We affirm.

## BACKGROUND

In December 2014, Officer Hedger was dispatched to an apartment on Ward Road after a woman called and reported that her boyfriend had been shot by a masked man. When Hedger arrived at the scene, he found complainant, Anthony Constante, shot dead on the apartment floor. Hedger observed there was damage to the frame of the apartment's front door.

Officer Lunsford arrived and processed the scene. Lunsford determined the door to the apartment was kicked in. Lunsford found several nine-millimeter bullet shell casings and bullet holes around the apartment. Complainant had been shot multiple times.

Police received information that appellant was the shooter. Appellant lived in the same apartment complex as complainant. Police found appellant at his place of employment, a Home Depot distribution center nearby. Officers questioned appellant about what clothing he had worn that day. Appellant told officers he had worn only the clothing he had on, jeans and a T-shirt, nothing more. Home Depot shared video surveillance which showed appellant arriving at Home Depot in a jacket similar to one the shooter reportedly wore. Officers found the jacket in the locker of one of appellant's co-workers. Appellant's co-worker told police appellant had asked if he could put his jacket in her locker. Particles of gunshot residue were later found on the cuff of appellant's jacket. Appellant was arrested and taken to jail. The next day, appellant was charged with the capital murder of complainant.

At trial, complainant's girlfriend Melissa testified that before the shooting, the only individuals in the apartment were herself, her daughter, complainant, and his cousin. Complainant's girlfriend was folding clothes when she heard loud banging on the apartment's front door. A man "busted" the door open, came in, and shot complainant. After complainant fell, the man "kept shooting and didn't stop." According to complainant's girlfriend, the shooter was wearing a black hoodie and a black T-shirt or bandana as a mask on his face, but the mask fell down so she was able to see his face. She later identified appellant in a photo array as the shooter.

Complainant's cousin Jose testified that before appellant came in the apartment, appellant was banging on the door and shouting. Although Jose could not make out what appellant was shouting, he recognized his voice and told complainant that it was appellant banging on the door. When the door flew open, Jose saw appellant run in wearing all black with a bandana over his mouth. Although his face was covered with a mask, Jose recognized appellant's movements. Jose ran to the restroom and hid. From the restroom, he heard shots fired.

Complainant's friend Dana[1] also testified. Early on the day of the shooting, Dana had been spending time with appellant, driving him around. After she took him home, appellant sent Dana a Facebook message asking her to return to his apartment complex because he left his phone in her car. The Facebook exchange between appellant and Dana was admitted as an exhibit. Appellant offered Dana gas money and told her to hurry. Dana returned to appellant's apartment complex. According to Dana, appellant looked for his phone but was unable to find it. He

---

[1]Because "Dana" was a minor at the time the offense was committed, we use a pseudonym rather than her actual name. *See* Tex. R. App. P. 9.10(a)(3).

3

told her to wait because he wanted her to drive him to work. Appellant walked back to the apartments. While she was waiting, Dana heard gunshots.

Afterwards, appellant walked quickly back to her car. Dana testified that appellant was walking, "as if [he was] trying to get somewhere real quick but not make it obvious that [he was] running." Appellant was carrying a bag, and he had a gun. When he got into Dana's car, he told her to drive and that he needed to get rid of his gun. He undressed in the car and put different clothes on. On the way to appellant's work, appellant told Dana to stop on the side of the highway so he could throw out the bag containing his gun and clothes. When Dana slowed the car down, appellant opened the car door and threw the bag. Appellant told Dana to "keep [her] mouth shut" and not tell "even her mother or closest friends" about what had happened. Dana then took appellant to work at the Home Depot distribution center.

Dana was 16 years old when these events took place. Dana testified that she was scared: "He was in my car with a gun. I was going to do everything he told me to do." Dana denied knowing "what [appellant] was going to do before he did it." Dana testified that had she known, she "would not have approved of it. [She] would have told him to stop 'cause that's not right." She later spoke to police and showed police where appellant had thrown the bag.

Officers testified that they retrieved the bag from a marshy area under a highway bridge and found several items inside, including a Glock semi-automatic pistol, a magazine, an ammunition box containing bullets, a bandana, and blue latex gloves. A firearms examiner from the Harris County Institute of Forensic Sciences firearms laboratory testified that she was able to match some of the fired bullets and casings collected at the apartment with the firearm officers recovered under the highway bridge.

4

Detective Crowell, who had specialized training in digital forensics including cell phone technology, testified that he recovered State's Exhibits 130–135 from appellant's cell phone. Exhibit 130 is a picture of appellant holding a firearm similar to the firearm recovered under the highway bridge. Exhibit 131 is a picture of two firearms similar to the firearm recovered under the highway bridge along with some bullets. Exhibit 134 is a picture of a similar firearm with an extended magazine. Exhibit 132 is a picture of appellant wearing a jacket similar to the jacket recovered at Home Depot. Exhibits 133 and 135 are pictures of appellant wearing a bandana on his face as a mask. Crowell testified that Exhibit 133 was created on December 4, 2013, and Exhibit 135 was created on January 28, 2014. Crowell was not able to recover metadata on Exhibits 130, 131, 132, or 134.

After the State closed, appellant's trial counsel called Detective Zucha who had interviewed complainant's girlfriend Melissa. In response to questioning by appellant's trial counsel, Zucha testified that in his notes from the interview, he had written that Melissa could not identify the shooter, but that he resembled appellant. Zucha testified that at one point Melissa had referred to appellant as Alvarez rather than Alvaro. Zucha also agreed that Melissa said "[m]aybe if she had seen him she'd be able to identify him."

## ANALYSIS

### A.    Accomplice-witness instruction

In his first issue, appellant complains that the trial court erred by overruling his objection to the omission in the jury charge of an accomplice-as-a-matter-of-law instruction with respect to Dana. A witness can be an accomplice as a matter of fact or as a matter of law. *Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017). Whether a defendant is entitled to an accomplice-witness instruction depends upon the evidence presented at trial. *Id.* If the record contains evidence

5

that a witness may have been an accomplice, the issue should be submitted to the jury to decide whether the witness was an accomplice as a matter of fact. *Id.* Conversely, a witness is an accomplice as a matter of law, and the jury should be so instructed, if (1) the witness has been charged with the same offense as the defendant or a lesser-included offense, (2) the witness has been charged with the same offense as the defendant or a lesser-included offense and the State dismisses such charges against the witness in exchange for the witness's testimony against the defendant, or (3) when the evidence is uncontradicted or so one-sided that a reasonable juror could not disagree with the determination that the witness is an accomplice. *Id.* at 886.

In this case, the trial court instructed the jury to decide whether Dana was an accomplice as a matter of fact. Appellant argues the trial court should have instructed the jury that Dana was an accomplice as a matter of law because no reasonable juror could conclude she was not an accomplice. Dana was never charged with the same offense as appellant or a lesser-included offense. Thus, the only consideration relevant to our analysis of this issue is whether the evidence was so one-sided that any rational juror would have concluded Dana was an accomplice as a matter of law. *See id.*

In support of his argument, appellant asserts Dana participated after the commission of the crime by driving appellant away from the alleged crime scene. Appellant also contends Dana knew that a crime had been committed and participated in disposing of the weapon and other items. Appellant emphasizes that although Dana was not charged with any crime relating to appellant's offense, the police told her that she could be charged with the crime.

The record shows the accomplice evidence in this case was not nearly so one-sided that a reasonable juror could not disagree with the determination that

6

Dana was an accomplice. Dana denied knowing "what [appellant] was going to do before he did it." Dana testified that had she known, she "would not have approved of it. [She] would have told him to stop 'cause that's not right.'" The Facebook message exchange between appellant and Dana corroborates this testimony. Appellant asked Dana to return to his apartment because he claimed he left his phone in her car. *See Mize v. State*, 915 S.W.2d 891, 895 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (evidence that showed witness drove defendant to and from scene of alleged robbery, but also that she did not help plan robbery or act with intent to assist defendant, did not establish that witness was accomplice as matter of law). The record also shows evidence that Dana acted under duress. Dana testified that she was scared when appellant got in her car with a gun: "He was in my car with a gun. I was going to do everything he told me to do." *See* George E. Dix & John M. Schmolesky, 43A *Texas Practice Series: Criminal Practice and Procedure* § 51:88 (3d ed. 2016) ("If in addition to evidence of participation there is evidence that this participation . . . was under duress, a factual question is presented").

Because Dana was not charged with the same offense as appellant or a lesser-included offense, and the evidence was conflicting, the trial court did not err by including an accomplice-as-a-matter-of-fact instruction in the charge, rather than an accomplice-as-a-matter-of-law instruction. *See Ash*, 533 S.W.3d at 885. We overrule appellant's first issue.

## B.  Admission of photographic evidence

Appellant contends, in his second and third issues, that the trial court erred in admitting into evidence over objection Exhibits 130–135, photographs from appellant's cell phone. Appellant argues the photographs are irrelevant and prejudicial. We review a trial court's decision to admit evidence under an abuse-of-

7

discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). To conclude the trial court abused its discretion in admitting evidence, we must find that the ruling was so clearly wrong as to lie "outside the zone of reasonable disagreement." *Id.* at 83.

### 1. Relevance

Under Texas Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401. A court will deem evidence relevant if the evidence is material to and probative of a matter properly provable in the case. *Henley*, 493 S.W.3d at 83–84. Evidence is material if it addresses any fact of consequence. *Id.* at 83. It is probative if it tends to make the existence of the fact more or less probable than it would be without the evidence. *Id.* Appellant asserts that the photographs, Exhibits 130–135, are irrelevant because the dates of some of the photographs are unknown and the known dates of two photographs are a year or more before the date of the offense.

It is not wholly clear from the record or appellant's brief whether this argument is or was an argument that the photographs are irrelevant, or that the photographs were not authentic, or both. At trial, appellant argued, "There's no way—there's no showing of when these photographs were taken. One was taken over a year before. The other was taken nine months before the offense. Neither of those are relevant other than to show the face of that." In his opening brief, under a heading stating the trial court erred because the photos were not relevant, appellant asserts that the predicate for the introduction of a photograph requires proof of "accuracy as a correct representation of the subject at a given time." To the extent appellant preserved and is making an argument that the photographs were not

authentic, we reject this argument. In support of his argument that "a given time" must be provided with respect to the photographs, appellant cites *Farrell v. State*, 837 S.W.2d 395 (Tex. App.—Dallas 1992), *aff'd*, 864 S.W.2d 501 (Tex. Crim. App. 1993). In *Farrell*, the Court of Criminal Appeals analyzed the authentication of videotapes using pre-rules predicate requirements. *Id.* at 400. The application of pre-rules predicate requirements was rejected by the Court of Criminal Appeals in *Angleton v. State*, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998). Authentication requirements are now governed solely by Texas Rule of Evidence 901. *Id.* at 67, 69.

Appellant also argues the photos are irrelevant because the pictures do not depict the firearm or the bandana that was used in the crime. Appellant cites *Downs v. State*, 65 So. 3d 594, 596 (Fla. 4th Dist. Ct. App. 2011), to argue that "[a] gun different than the one used in a crime is not relevant to prove that the crime occurred." Appellant asserts the State offered no evidence connecting the photographs to the crime. The photographs are relevant because they link appellant to the items discovered under the highway bridge and tend to make a material fact—appellant's identity as the shooter—more probable than it would be without the evidence. *See Jones v. State*, 531 S.W.3d 309, 323 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (rejecting defendant's argument that photograph was irrelevant because date of photograph was unknown when investigator used photograph to determine identity of individuals involved in shooting). Exhibits 130, 131, and 134 show appellant had access to firearms similar, if not identical, to the murder weapon. Exhibit 132 shows appellant had worn a jacket similar, if not identical, to the jacket described by witnesses to the shooting and recovered by police at Home Depot. Exhibits 133 and 135 show appellant wore a bandana similar, if not identical, to the bandana described by witnesses to the shooting and

9

recovered by police under the highway bridge. These items were strongly probative of appellant's identity as the shooter. Moreover, *Downs* is distinguishable.[2]

In *Downs*, there was testimony by a detective that the firearm evidence at issue "had nothing to do" with the case. 65 So. 3d at 596. The detective explained, "[i]t was not an automatic, the type of gun used in the shooting." *Id.* In this case, no affirmative evidence was presented to show that the firearm used in the crime did not appear in the pictures. Here, unlike in *Downs*, the guns pictured in the photographs showed firearms similar, if not identical, to the murder weapon.

Because the photographs are relevant, we overrule appellant's second issue.

## 2. Rule 403 analysis

Having determined the photographs, Exhibits 130–135, were relevant, we evaluate whether the probative value of the photographs substantially outweighed the danger of unfair prejudice under Texas Rule of Evidence 403. Appellant contends the trial court erred in admitting the evidence because any probative value the photographs had was outweighed by a danger of unfair prejudice.

Although relevant, evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. The admissibility of a photograph rests within the trial court's sound discretion and is based on a determination of whether the exhibit serves a proper purpose in assisting the factfinder. *Ramirez v. State*, 815 S.W.2d 636, 646–47 (Tex. Crim. App. 1991). An

---

[2] "Cases from other jurisdictions construing rules of evidence that are identical or substantially the same as our own serve as persuasive authority in the construction of our own rules of evidence." *Saavedra v. State*, 297 S.W.3d 342, 348–49 (Tex. Crim. App. 2009).

abuse of discretion occurs when the evidence has little probative value and great inflammatory potential. *Id.* at 647. The trial court is usually in the best position to determine whether evidence should be admitted or excluded. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). The balance between probative value and the potential for prejudice "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

A Rule 403 analysis must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

All evidence tends to be prejudicial to one party or the other. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Webb v. State*, 995 S.W.2d 295, 301 (Tex. App.—Houston [14th Dist.] 1999). Prejudice is "unfair" if it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery*, 810 S.W.2d at 378 (quoting Advisory Committee's note to Fed. R. Evid. 403).

In support of his argument that the photographs are unfairly prejudicial, appellant reiterates his argument that the photographs were not relevant and argues

that "these photos could easily tempt the jury into finding [appellant] guilty on different grounds, instead of focusing only on the evidence proving the offense occurred."

We conclude that the Rule 403 factors overall weigh more strongly in favor of admission. *See Hedrick v. State*, 473 S.W.3d 824, 831 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court reasonably could have found the inherent probative force of the evidence was strong. The photographs linked appellant to descriptions of the shooter given by Melissa and Jose. The photographs also linked appellant to items found in the bag of evidence under the highway bridge. While the photographs arguably were cumulative of the testimony of complainant's girlfriend and cousin identifying appellant as the shooter, appellant cast doubt on these identifications through cross-examination and closing argument. The trial court reasonably could have concluded that the State needed the photographs to persuade the jury that appellant was the shooter.

The presentation of the photographs did not consume an inordinate amount of time during the trial. The photographs were not likely to confuse the jury. Evidence was presented regarding how the State obtained the photographs. There was no dispute that the photographs came from appellant's cell phone and were created on either an unknown date or a date far in advance of the commission of the offense. In closing, defense counsel argued there was no link between the photographs and the complainant's shooting. *See Jones*, 531 S.W.3d at 323–24 (concluding jury would not be misled by evidence because jury was aware of circumstances surrounding evidence).

In addition, the photographs are not so inflammatory that they would suggest a verdict on an improper basis. The photographs of appellant in a bandana or a jacket (Exhibits 132, 133, and 135) are not themselves so prejudicial that they

12

would have "tempt[ed] the jury" to find appellant guilty on improper grounds. *See Lopez v. State*, 478 S.W.3d 936, 947 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("[T]he presence of a blue bandana alone is not sufficiently prejudicial to outweigh the photograph's probative value."). While the photographs including guns may have been inflammatory, the prejudice resulting from the admission of those photographs did not substantially outweigh their probative value. The photographs showing appellant possessed firearms similar or identical to the murder weapon were strongly probative of appellant's access to the murder weapon and identity as the shooter. Consequently, we conclude the trial court's decision to admit the photographs was not so clearly wrong as to lie outside the zone within which reasonable persons might disagree. The trial court did not abuse its discretion by admitting State's Exhibits 130–135 into evidence. We overrule appellant's third issue.

## C.     Motion for new trial

In his fourth issue, appellant contends the trial court abused its discretion by denying his motion for new trial because "two witnesses talked to jurors about the case." The State responds that appellant waived this issue.

In his motion for new trial, appellant did not assert he was entitled to a new trial because of any contact between witness and jurors. The sole grounds listed by appellant in his written motion for new trial were, "The verdict is otherwise contrary to the law and the evidence in the case," and "[t]he interest of justice requires the granting of a new trial." There was no hearing on the motion, and appellant did not otherwise raise contact between witnesses and jurors in the motion for new trial proceedings.

Because appellant failed to raise the issue he now asserts on appeal in his written motion for new trial and because there was no hearing on that motion, the

issue is waived. *See* Tex. R. App. P. 33.1(a); *Keeter v. State*, 175 S.W.3d 756, 759–60 (Tex. Crim. App. 2005) ("Because of the nature of the appellant's complaint on appeal—that the trial court erred in denying his motion for new trial—he must have raised the [issue] at some point during the motion for new trial proceedings to preserve the complaint for appellate review"); *see also State v. Zalman*, 400 S.W.3d 590, 593–94 (Tex. Crim. App. 2013) ("We have repeatedly held that . . . the matter of error relied upon for a motion for new trial must be specifically set forth therein." (internal quotations omitted)). We overrule appellant's fourth issue.

## D.    Penal Code section 19.03 and "bootstrapping" argument

In his fifth and final issue, appellant contends Penal Code section 19.03 is unconstitutional as applied to him. Specifically, appellant complains that the State impermissibly attempted to use his murder of complainant in two ways: (1) to establish the murder requirement for capital murder and (2) to establish the felony component of the underlying burglary elevating the murder to capital murder. Appellant contends this type of "bootstrapping" is unconstitutional as it violates his right to due process.

Appellant concedes that the Court of Criminal Appeals "has rejected such arguments in the past." Indeed, the Court of Criminal Appeals has held in several cases that a murder occurring after a break-in may serve as both the basis for the murder charge and the underlying felony required for burglary. *See Gardner v. State*, 306 S.W.3d 274, 287 (Tex. Crim. App. 2009) ("In a prosecution for capital murder based on burglary, the requirement that a felony be intended is satisfied by the murder of the victim."); *Homan v. State*, 19 S.W.3d 847, 848 (Tex. Crim. App. 2000) (reversing court of appeals which held murder of complainant could not be used to support burglary charge); *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex.

14

Crim. App. 1995) (holding evidence sufficient to prove burglary component of capital murder when defendant entered complainant's home without consent and killed complainant). The Court of Criminal Appeals also has held that reliance on "the same act to constitute both an element of the underlying felony (burglary) and the allegation of murder" does not violate a defendant's due process rights. *See Fearance v. State*, 771 S.W.2d 486, 494 (Tex. Crim. App. 1988) (rejecting argument that using same act in this manner violated defendant's right to due process because it "cut[] against the legislative intent in the capital murder statute").

Appellant nonetheless asserts that "courts are consistently troubled with such a concept," citing, without analysis, two dissents to Court of Criminal Appeals opinions.[3] Dissenting opinions have no precedential value. Under stare decisis, this court is bound to follow the precedent established by the Court of Criminal Appeals. *Gardner v. State*, 478 S.W.3d 142, 146 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing, among others, *State of Texas ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."), and *Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation under the dictates of vertical stare decisis.")).

The precedent established by the Court of Criminal Appeals unequivocally

---

[3] Appellant cites *Muniz v. State*, 851 S.W.2d 238, 264 (Tex. Crim. App. 1993) (Clinton, J., dissenting), and *Fearance*, 771 S.W.2d at 514 (Teague, J., dissenting). The appellant in *Homan* unsuccessfully relied on the same dissents. *See Homan*, 19 S.W.3d at 848 & n.3 ("Appellant cites no precedent in support of his argument, although he does rely on past dissenting opinions from this Court." (citing the same dissents in a footnote)).

holds that a defendant's murder of a complainant may establish the murder requirement for capital murder and establish the felony component of the underlying burglary, elevating the offense to capital murder without violating a defendant's right to due process. Consequently, we overrule appellant's fifth issue.

## CONCLUSION

Having overruled all appellant's issues, we affirm the trial court's judgment.


/s/    Charles A. Spain
Justice


Panel consists of Chief Justice Frost and Justices Spain and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).