DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LENSKY M. JEANBART,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-2726

[April 1, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Krista Marx, Judge; L.T. Case No. 50-2016-CF-002976-AXXX-MB.

Kari Jorma Myllynen of The Law Office of K.J. Myllynen, Esquire, Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

DAMOORGIAN, J.

Lensky M. Jeanbart ("Defendant") files a new appeal following this Court granting his petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. *See Jeanbart v. State*, 254 So. 3d 1033 (Fla. 4th DCA 2018). Concluding that the court erred by (1) instructing the jury to disregard relevant evidence admitted during trial; and (2) admitting into evidence a gun with Defendant's DNA that was not used in the charged crimes, we reverse and remand for a new trial.

Defendant was charged with two counts of attempted first-degree murder with a firearm (premeditated), burglary while armed, two counts of shooting into an occupied vehicle, aggravated assault with a firearm, and accessory after the fact second degree or above.

Defendant proceeded *pro se* to a jury trial, during which the following facts were established. On the day of the incident, Jean Aime ("Victim 1") parked his car on the street, pulling in behind another vehicle that was

also parked on the road. Kason Lindor ("Victim 2") was sitting in his vehicle when Victim 1 arrived.

As Victim 1 was assisting his daughters out of the car and escorting them to his mother's house, he noticed a silver Chevrolet come around the block and make a U-turn. His younger daughter went back to the car, and while she was inside the car, the Chevrolet pulled up alongside the parked cars. The passenger from the Chevrolet ("codefendant") exited the vehicle and shot at Victim 1's car. Victim 2 exited his vehicle and tussled with the codefendant, yelling that there were kids in the car. Victim 1 and his daughter went inside his mother's house. When Victim 1 exited the house, he noticed that Victim 2's car and the Chevrolet were gone. The codefendant was still there, and he fired another shot into Victim 1's car. Moments later, the Chevrolet returned, the driver lowered the car window, and screamed at the codefendant, "let's go, let's go, you doing dumb shit right now." Victim 1 was able to see Defendant as the driver and recognized his voice, whom he knew as a friend of his brother's. Victim 1 also identified Defendant in a photo lineup.

Hours later, after Defendant and the codefendant fled the scene, a Broward Sheriff's deputy observed an accident involving the Chevrolet. The deputy identified Defendant as the driver of the Chevrolet. While the deputy was dealing with the codefendant, who was still sitting in the passenger seat, Defendant got in another car and left the scene. The codefendant then got into the driver's seat of the Chevrolet and drove away. The Chevrolet was then involved in a second accident. During a search of the vehicle, the police recovered two firearms: a Ruger 45 and Sig Sauer 9mm. The 9mm, which was just outside the passenger door of the vehicle, contained Defendant's DNA. The State presented evidence that the codefendant used the Ruger 45. However, there was no evidence establishing that the 9mm was used in the shooting.

During Defendant's closing argument, Defendant argued that there was no conscious, criminal intent because he did not know that a crime was going to be committed. The State objected on the grounds that the statement was based on facts not in evidence and moved to strike. The court sustained the objection.

Defendant proceeded with his closing and argued that Victim 1's testimony demonstrated that Defendant was not in agreement with the codefendant's actions because he yelled "you doing dumb shit." The State again objected as facts not in evidence and moved to strike the statement. The judge sustained the objection and ordered the jury to disregard the last statement.

Defendant resumed his closing argument and stated that he was not in agreement with the acts done by his codefendant. The State objected again as facts not in evidence and the judge sustained the objection.

Later in closing, the following exchange occurred:

DEFENDANT: And I would like to point out a few things to the Court before I leave this podium. The Defendant in this case (1) was unaware of what the companion or this co-defendant intended to do. And [Victim 1] made that perfectly clear because he said there was a disagreement between the - - between the alleged driver and the shooting which means that the alleged driver did not know. He didn't want to participate.

STATE: Objection; facts not in evidence, move to strike.

COURT: Sustained. Disregard the last comment.

DEFENDANT: [Victim 1] gave testimony before the Court that this individual didn't even know that this crime was going to be committed. **Why is that? Because –**

STATE: Objection; facts not in evidence, move to strike.

COURT: Sustained. Disregard that comment.

DEFENDANT: There is no proof of specific intent or participation in this case or aid in its perpetration. There is no evidence. From all the evidence that you have here today, there's nothing that shows these things.

(Emphasis added).

The jury found Defendant guilty, based on the principal theory, of two counts of attempted first-degree murder with a firearm (premeditated), two counts of shooting into an occupied vehicle, and accessory after the fact. This appeal follows.

On appeal, Defendant first argues that he is entitled to a new trial because the court impermissibly sustained objections and instructed the jury to disregard facts that were in evidence as Defendant argued his lack of intent during closing argument. We agree. The trial court erred in

3

sustaining the State's objections to Defendant's closing argument. On this point, the State concedes that the court erred by sustaining the State's objections.

Defendant's entire defense was based on a lack intent to aid or abet the codefendant since he had no knowledge that the codefendant intended to commit the crimes. Evidence to support this theory was based on Defendant's words and deeds. The words, which were the focus of Defendant's closing, were gleaned from Victim 1 who testified that upon Defendant's return to the scene, Defendant lowered his car window and yelled to the codefendant "let's go, let's go, you doing dumb shit right now." As Defendant's characterization of Victim 1's testimony was accurate, we conclude that the court's rulings on the State's "facts not in evidence" objections were error and any instruction to the jury to disregard the evidence compounded the error.

In addition, it cannot be said that "there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). Defendant's statement was central to his defense. When the court instructed the jury to disregard evidence of Defendant's statement, Defendant was unable to draw the inference that his statement to the codefendant showed that he was in disagreement with and had no intention of participating in the codefendant's actions. *See Brinson v. State*, 153 So. 3d 972, 980 (Fla. 5th DCA 2015) (citing *McArthur v. State*, 801 So. 2d 1037, 1039-40 (Fla. 5th DCA 2001)) (The parties are permitted to "advance all legitimate arguments and draw logical inferences from the evidence."); *see also Thomas v. State*, 838 So. 2d 1192, 1196 (Fla. 2d DCA 2003) ("[T]he trial court's comment was not harmless error because the trial court commented on the evidence that went to the very foundation of the defense.").

We next address Defendant's argument that the court erred in admitting a gun with his DNA that was not used in the commission of the crimes.

"The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence." *Holloway v. State*, 114 So. 3d 296, 296 (Fla. 4th DCA 2013) (quoting *Tengbergen v. State*, 9 So. 3d 729, 736 (Fla. 4th DCA 2009)).

"[A]ll relevant evidence is admissible unless the law otherwise provides." *State v. McClain*, 525 So. 2d 420, 421 (Fla. 1988); *see also* § 90.402, Fla. Stat. (2019). "Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2019). However, relevant evidence may

be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." § 90.403, Fla. Stat. (2019).

"[I]n order for evidence of a firearm to be admissible as relevant in a criminal trial, 'the State must show a sufficient link between the weapon and the crime.'" *Agatheas v. State*, 77 So. 3d 1232, 1236 (Fla. 2011) (quoting *Jackson v. State*, 25 So. 3d 518, 528 (Fla. 2009)). The Fifth District has described what is, and what is not, necessary to show the sufficient link.

> In determining whether a sufficient nexus exists, the trial court can consider testimony identifying distinct similarities between the weapon used in the crime and the weapon proffered at trial. . . . A sufficient nexus does not, however, require testimony that the proffered weapon is definitively the weapon that was used during the crime. Indeed, if it is inconclusive that the proffered weapon is the weapon used during the crime but a sufficient nexus exists, it is the jury's province to determine the credibility and weight of the evidence.

*Gartner v. State*, 118 So. 3d 273, 276 (Fla. 5th DCA 2013) (internal citations omitted). However, "where the evidence at trial does not link a seized gun to the crime charged, the gun is inadmissible in evidence. A gun different than the one used in a crime is not relevant to prove that the crime occurred." *Downs v. State*, 65 So. 3d 594, 596 (Fla. 4th DCA 2011) (internal citations omitted).

Defendant argues the gun was erroneously admitted because the State failed to show a sufficient link between the crime and the firearm. The State counters that the gun was relevant and inextricably intertwined to the crimes because it was probative of (1) Defendant's identity as the driver of the Chevrolet; and (2) Defendant's intent as a principal to the crimes.

We reject the State's argument that the 9mm gun was relevant to establish the identity of Defendant as the driver of the Chevrolet. No one saw Defendant with the gun before, during, or after the commission of the crimes. Furthermore, none of the shots fired came from the 9mm. In fact, the State established Defendant's identity as the driver through the testimony of Victim 1 and the deputy at the scene of accident who saw Defendant exit from the driver's side after the accident.

We likewise reject the State's argument that the 9mm was relevant because it was circumstantial evidence that Defendant had the "intent to

5

assist with the crimes or his knowledge of what his co-defendant was going to do." The State supports this argument by suggesting that the 9mm was likely in the car with Defendant at the time of the shooting. The State offers no proof to support its suggestion. But even if that suggestion was true, Defendant's possession of a gun at some point does not prove that he knew the codefendant's intentions or that he intended to participate in the codefendant's criminal acts. *See Fugate v. State*, 691 So. 2d 53, 54 (Fla. 4th DCA 1997) (finding that the trial court erred in admitting a handgun that was found some distance from the crime scene of an aggravated assault, but where there was no link to the charged crime); *Sosa v. State*, 639 So. 2d 173, 174 (Fla. 3d DCA 1994) (holding that where the defendant was charged with firing a handgun at the victim's car, trial court erred in admitting bullets found in defendant's car because there was no link established between the bullets and the crime).

Even if we were to conclude that the 9mm was marginally relevant to proving Defendant guilty as a principal to the crimes charged, the danger of unfair prejudice substantially outweighed any relevance. *See Downs*, 65 So. 3d at 596 (alteration in original) (quoting *O'Conner v. State*, 835 So. 2d 1226, 1231 (Fla. 4th DCA 2003)) ("Any marginal relevance in this type of testimony [is] substantially outweighed by the danger of unfair prejudice under section 90.403.").

Finally, the error in admitting the gun was not harmless beyond a reasonable doubt. Since Defendant's main theory of defense was that he did not have the requisite intent to commit the crimes charged, there is a reasonable possibility that admission of a gun clearly not connected with the crimes contributed to the verdict.

> Harmlessness is not established . . . when there is otherwise sufficient, even persuasive, evidence in the record to support the convictions. Nor . . . is the pertinent test satisfied by our being pretty sure either that the defendant actually was guilty, or that the jury was not influenced by the error we have identified. Instead . . . we must be satisfied beyond a reasonable doubt that it did not contribute to the verdict. *Particularly because of the critical potential effect of the erroneous evidence on the defendant's credibility and in light of the fact that an important and fairly disputed issue in the case concerned the very question implicated by the error . . . .*

*Ousley v. State*, 763 So. 2d 1256, 1257 (Fla. 3d DCA 2000) (emphasis added).

Based on the foregoing, we reverse the judgment and sentences and remand for a new trial.

*Reversed.*

G<small>ROSS</small> and M<small>AY</small>, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***